Feusier *v.* Sneath.

L. FEUSIER ET AL., RESPONDENTS, *v.* R. G. SNEATH, APPELLANT.

Parol evidence cannot be heard to prove that a bill of sale, (under seal) absolute on its face, was intended merely as an assignment in trust for the benefit of grantor's creditors, unless in case of fraud or mistake.

Parol evidence that an absolute deed for land was intended as a deed in trust for grantor's creditors, is liable to two objections: first, the same as that in regard to the bill of sale under seal; second, it would be establishing a trust by parol, which is in violation of the 6th section of the Statute of Frauds of California, where the land is located.

If the bill of sale and conveyance of the land were procured by fraudulent representations that they would be held in trust for all the creditors, these fraudulent representations might be proved, and a trust would thereby be established.

In an equity case, this Court may order the proper decree to be entered in the Court below without the formality of a new trial.

UPON REHEARING.—The unsupported testimony of one of the contracting parties to a sealed instrument can in no case be sufficient to establish fraud in proving the execution of the instrument.

The rule that an Appellate Court will not disturb the judgment of a *nisi prius* Court founded on the verdict of a jury where there is conflicting testimony, has no application to Chancery cases tried without a jury. More especially is this the case when all the important testimony is contained in depositions. This Court is as competent to determine the weight and effect to be given to written testimony as the Court below.

To prove that a deed, absolute on its face, was given as a deed in trust, is not to prove a new and distinct contract, but is to vary and contradict the terms of the deed.

The rule that a deed, absolute on its face, may be proved to have been given as a mortgage, is an exception to the general rule, rests on peculiar reasons, and the proof to be introduced is of a peculiar nature.

Courts of Equity may inquire into the objects which induced parties to enter into contracts, and may prevent a fraudulent use being made of them.

When there is an attempt to show that the object of a deed is different from that expressed on its face, the proof must be clear and conclusive; and there must also be satisfactory evidence that one of the parties has committed, or is attempting to commit some fraud, before the Court will interfere.

APPEALED from the District Court of the First Judicial District, Hon. RICHARD RISING, presiding.

*Hillyer & Whitman*, for Appellant, made the following points :

1st. The Court should have sustained the demurrer, because the complaint shows no assent to the assignment by plaintiffs, and no demand until after distribution. (2 Story's Eq., Sec. 1036, *a*.)

2d. The Court erred in its judgment for the same reason. If the assignment was as claimed by plaintiffs, it was revocable by Bolan & Sneath until distribution had been made; unless the creditors assented, and unless the assignee acted as directed, no such revocation was had, and therefore the distribution became absolute. (2 Story's Eq., Sec. 1036, b.)

3d. The gist of the complaint is the conversion of moneys by defendant. There is no conflict of evidence on this point. All moneys coming into the hands of defendant were paid out by him. Therefore, plaintiffs should not have recovered, and the Court erred in so adjudging.

4th. The findings of fact of the Court are not warranted by the evidence or pleadings, or either.

5th. If there was any such agreement as claimed by the plaintiffs it was in parol, and therefore void. (Statutes 1861, Secs. 70–71.) The Court erred in not ruling out all testimony on this point; in not granting a nonsuit; in considering such testimony, and in its findings and judgment.

*W. L. Hoover & F. W. Cole,* for Respondents, made the following points:

1. The assent of creditors to an assignment is presumed until the contrary is shown. The complaint states that demand was made of defendant after the proceeds of the sale were collected and a dividend declared. (Burrill on Assignments, 308–317 and 325; *Brooks* v. *Marbury,* 11 Wheaton, 78; *Nicoll* v. *Mumford,* 4 John. Ch. 522.) As to the question of demand, see Burrill on Assignments, 482 and 524.

2. It was unnecessary to allege in the complaint that the assignment was not revoked. That is a matter which defendant should set up in his answer as a defense, and both the pleadings and the testimony in the case show the assignment never was revoked.

3. The gist of the complaint is to recover the proportionate share of the plaintiffs and their assignors in the proceeds of the sales of the property assigned and withheld from them by the defendant. (Burrill on Assignments, 539, and cases cited.)

9

4. The Statutes of 1861, cited by appellant's counsel, are not applicable to the case at bar.

1. Sec. 71 of the Act of 1861 concerning conveyances, reads: " Every grant or assignment of any *existing* trust in lands, goods, etc., shall be void, etc." There is no grant or assignment of an existing trust in this case. (Browne on Statute of Frauds, 101.)

2. The statutes do not extend to declarations of trust of personal property. (Story's Eq. Jur., Sec. 972; Willard's Eq. 413; Hill on Trustees, 57; *Gray* v. *Thompson,* 1 Johns. Ch. 82; *Day* v. *Roth,* 18 N. Y. Rep. 448.)

3. The statutes have no reference to trusts created by the operation of law. (4 Kent's Com. 305; Hill on Trustees, 59; *Harrison* v. *McMenomy,* 4 Edwards Ch. 251; *Letcher* v. *Letcher's Heirs,* 4 J. J. Marshall, 590; *Hosford* v. *Mervin,* 5 Barb. 57.)

4. The transfer of the property assigned was made in writing, and the declaration of trust by parol. (Burrill on Assignments, 83–89, 139–229, and cases cited; 1 Greenleaf's Ev. 375; *Lewis* v. *Gray,* 1 Mass. Rep. 297; *McRea* v. *Purmort,* 16 Wend. 475.)

5. The defendant in his answer admits the trust. (2 Paige, 177.)

5. The judgment of the Court below is warranted by the evidence, and should be affirmed. The testimony in the Court below was somewhat conflicting, but this Court will not review conflicting testimony.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The plaintiffs filed a complaint in the nature of a bill in equity, setting up substantially the following state of facts: In November, 1864, James Bolan & Co., being merchants, either insolvent or in failing circumstances, made an assignment to defendant, one of their creditors, of all their effects. In January following James Bolan, to carry out the purpose of the assignment, executed a deed to defendant for a piece of real estate in California. Said assignment was made in trust that defendant would sell the property,

etc., and pay all the creditors of Bolan & Co. *pro rata.*    Plaintiffs further aver that defendant accepted the trust, and at the time of the creation of the trust plaintiffs and their assignors were among the creditors of Bolan & Co., to the extent of over two thousand dollars.    That defendant went on to sell and collect the assets of Bolan & Co., and declared a dividend among the creditors.    That after the dividend was declared plaintiff had notified defendant of his claims, and demanded his share of the dividends; but defendant had refused to pay the same, and had fraudulently converted plaintiff's share to his own use, etc., etc.    Defendant denies that he ever received any assignment of the effects of Bolan & Co., otherwise than as an absolute sale and delivery.    He denies the existence of any such trust as is alleged in the complaint; denies that the conveyance of the California property was in furtherance of any such trust as alleged in the complaint.    He denies that he took or held the property in trust, as alleged in the complaint.

Defendant, after these denials, goes on to give his own version of the transaction.    He says that, being the largest creditor of Bolan & Co., and knowing their embarrassed circumstances, he proposed to the other creditors to assign their claims to him for collection. The following named creditors did assign theirs as specified:

| | | |
|---|---:|---:|
| M. Wertheimer | $ 68 | 55 |
| John Naglee | 447 | 02 |
| M. Evans | 24 | 75 |
| W. L. Ross | 87 | 91 |
| Sullivan & Cashman | 2,096 | 80 |
| J. H. Cutter | 683 | 23 |
| G. Venard | 175 | 00 |
| Defendant's claim | 2,591 | 02 |
| Total | $6,174 | 28 |

With these claims in hand he proceeded to negotiate with James Bolan & Co. for the purchase of their stock of goods, etc.; did make a purchase; and transferred to Bolan & Co. a sufficient amount of these claims, receipted in full, to cover the purchase.

He further says, after this transaction was completely closed, and the goods, etc., in his possession, he proposed to the present

plaintiff and his assignors that they should also assign their claims to him, and he would do his best to collect them. That they declined because Bolan had some property in Virginia which had not been sold or assigned, and plaintiff and other Virginia creditors hoped to make their debts out of this property. Defendant then entered into further negotiations with Bolan to get other security for the balance of claims in his hands. That Bolan, being influenced by plaintiff, refused to enter into further negotiations, and he then attached the California property. After the attachment, Bolan deeded him the California property at a price much above its value. Defendant realized from the personal property, chose in action, and the California real estate $4,346.54, which he distributed *pro rata* among the claims assigned to him.

These assigned claims he receipted in full and handed over to Bolan, who received them as full consideration for what he had sold or assigned to defendant. The case came on for trial, and the plaintiffs first introduced the following instrument:

" Know all men by these presents, that we, James Bolan & Co., of Virginia City, State of Nevada, merchants, for and in consideration of the sum of fifty-four hundred and twenty-five dollars, to us in hand paid by R. G. Sneath, of San Francisco, California, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have bargained, sold, and delivered, and by these presents do bargain, sell, and deliver unto the said R. G. Sneath, all the goods, wares, merchandise, chattels, and effects mentioned and described in the schedule hereunto annexed and marked A, contained in the brick store, corner of B and Union Streets, Virginia City, together with the book accounts, notes, safes, horses and wagons, and all other personal property, whether mentioned in the above schedule A or not. To have and to hold the said goods and property unto the said R. G. Sneath, his executors, administrators, and assigns, to his and their own proper use and benefit forever; and we, the said James Bolan & Co., for ourselves and heirs, executors, and administrators, will warrant and defend the said bargained goods and property unto the said R. G. Sneath, his executors, administrators, and assigns, from and against all persons whomsoever.

" In witness whereof, we have hereunto set our hands and seals this seventeenth day of November, 1864.

" JAMES BOLAN & Co.   [Seal.]
" J. E. SMITH."       [Seal.]

Then the plaintiff offered in evidence the deposition of J. E. Smith. Before the deposition was read, the defendants made the following objection to it :

" Defendant objects to all testimony, and all that class of testimony in the said deposition in relation to a parol trust, as incompetent and irrelevant: first, because it varies the contents of a written instrument; and secondly, because under the statutes of this State there can be no such thing as a trust under parol constituting a parol trust outside of a written agreement."

They also made the same objections to the deposition of James Bolan.

The depositions were read, and the Court below seems to have been guided almost exclusively by the testimony contained in these two depositions in the conclusions at which it arrived.

Whether the depositions should have been read or not, is, we think, rather problematical. If read, it could only be for one purpose, and that to establish fraud on the part of the defendant in procuring the bill of sale, above quoted. No evidence can be admitted for the purpose of engrafting a parol trust upon an instrument which purports to be an absolute gift (except in case of fraud or mistake). (See Hill on Trustees, page 60.) Here was an absolute bill of sale of certain chattels. " To have and to hold the said goods and property unto the said R. G. Sneath, his executors, administrators, and assigns, to his and their own proper use and benefit."

To attempt to prove that these goods, etc., were assigned in trust for the purposes claimed by plaintiff, is simply to attempt to contradict every material portion of the bill of sale. Such evidence was wholly inadmissible. The depositions objected to attempt to prove a parol agreement, simultaneous with the bill of sale, that the goods were to be disposed of and the proceeds held for *pro rata* distribution amongst all the creditors of Bolan & Co.

The evidence, so far as it relates to the bill of sale, was objection-

able, not because of anything in our Statute of Frauds, but because it was in violation of an established common law rule that you cannot contradict, vary, or explain a deed by parol evidence.

In regard to real estate deeded in California, there would be two objections to admitting parol evidence to show it was deeded in trust. The one, the same as that to the bill of sale; the other, it would be in direct conflict with the sixth section of the Statute of Frauds of California (fifty-fifth section of our Act in regard to Conveyances) to permit a trust in lands to be established by parol. If, however, the defendant, by fraudulently promising to hold the proceeds of these goods for distribution *pro rata* among all the creditors, obtained this bill of sale and conveyance of the California real estate, then the law would hold him as a trustee for those for whose benefit Bolan and his partner supposed they were making the sale and conveyance.

If then the evidence to which we have alluded was admissible, it was only so to prove fraud. Fraud is not properly set up in the complaint; indeed, the complaint is perhaps equally defective in other respects. But if the evidence made out a case of any kind for the plaintiffs, we would probably send it back with leave to amend. We will then examine the evidence and give to it that consideration to which it would be entitled if the complaint was properly drawn to meet the evidence.

In our opinion, the evidence utterly fails to show fraud. The first contract and bill of sale were made in San Francisco. No one was present but Bolan, the defendant, defendant's clerks and a Mr. Sullivan, who was one of the defendant's assignors. Of all those who were present, Bolan alone is called on by the plaintiffs to prove the circumstances of the transaction. He states the transaction in such a way as to present the conduct of the defendant in a very unfavorable light. If we were to take all Bolan says as strictly true, perhaps we would be forced to the conclusion that the conduct of the defendant was fraudulent, and be compelled to hold that there was a resulting trust arising from that fraudulent conduct in favor of plaintiff. But there is not a particle of evidence corroborating the statement of Bolan. His statement directly contradicts the written and sealed instrument which he executed. What

Bolan said to his partner Smith, in Virginia, after he had executed the instrument in San Francisco, is certainly entitled to no consideration.  Defendant had nothing to do with that.  Bolan may have made any number of false statements to Smith, and that could not affect defendant, if he had nothing to do with his statements.

Defendant himself is called as a witness; his statement accords with and does not contradict the writing.  He produces the written memorandum of Bolan, showing that according to Bolan's own estimate the *firm* was insolvent; but that Bolan's individual property, which was nearly all in Virginia City, would more than pay all debts left unpaid after the firm assets were exhausted.  The defendant says that whilst he took the bill of sale to secure the debts he then represented, to wit: his own debt and some San Francisco debts which were assigned to him, and which he immediately receipted and handed over to Bolan, he did agree that if Bolan would assign to him his individual property in Virginia, he would act as the common agent of all the creditors, and divide the proceeds *pro rata* among them all.  The testimony abundantly proves that he did attempt to carry out this agreement.  He tried to get the Virginia claims assigned to him.  This, one of the plaintiffs, L. Feusier, proves.  And the reason why the Virginia creditors would not assign to him was, that they were in doubt as to whether they would do best to assign their claims to defendant or to look to the individual property of Bolan.  Under the law as it then stood, the Virginia creditors could have attached Bolan's property, whilst the San Francisco creditors could not.  Now, it is rather improbable that Sneath, representing at the time the San Francisco creditors, and those only, would have taken property confessedly insufficient to pay the debts of Bolan & Co., and receipted those debts in full, which he then represented, and at the same time agreed to divide what he had with the Virginia creditors, leaving Bolan's individual property untouched.  Bolan represented his Virginia property as more than adequate to pay all his Virginia debts.  Sneath, governed by these representations, was, of course, willing to take all the property, and let all the creditors come in *pro rata*.

Sneath's testimony is not only sustained by the bill of sale, but in reality by all the surrounding circumstances.  If the facts stated

in a sealed instrument may be contradicted and the deed set aside and declared void merely on the testimony of one of the contracting parties, who says the facts did not exist as stated in the instrument, then there is no safety in entering into contracts.

In this case, there was no evidence justifying the Court below in arriving at a conclusion that defendant held the goods sold by Bolan & Co. in any other way than as the bill of sale (which was under seal) says they shall be held.

That the defendant did in good faith try to carry out his agreement to get Bolan to assign the Virginia property to him, and did try to get the Virginia claims all assigned to himself, is beyond question. Both Feusier and Forestill, who are interested in those claims, admit they were solicited to assign their claims and failed to do so. They hesitated about doing so until Bolan's Virginia property had all disappeared or been swallowed up in some way. Some of the Virginia creditors did assign, and defendant let them in for a *pro rata* dividend. Had the present plaintiffs done the same thing, they would probably have fared the same. Had the Virginia claims been promptly transferred to Sneath, he might have attached Bolan's property then, if he had refused to make the assignment.

The plaintiffs seem to have lost their debts by hesitation and delay. We see no evidence, except the insufficient testimony of Bolan, to prove fraud or misconduct on the part of Sneath.

This is an equity case, and as such it is within the province of this Court, in a proper case, to direct what decree shall be entered in the Court below. As in this case there is not the slightest doubt what the decree should have been, or what it ought to be, without putting the parties to the expense of a new trial, we will finally dispose of the case.

The judgment of the Court below must be reversed, and a judgment for costs entered in favor of defendant; and the Court below is so directed.

RESPONSE TO PETITION FOR REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The petition for rehearing is principally devoted to a review of the evidence.   In this review counsel attempt to show some discrepancies between the answer of defendant, Sneath, and his testimony on the stand.

Admitting the discrepancies to be as great and irreconcilable as counsel claim—even admitting that the discrepancies in defendant's answer and evidence were so great as totally to discredit him—it would not, in our opinion, alter the result in this case.

If two parties should contract, under seal, and one of these parties should attempt to show fraud in procuring his signature to the deed by his own simple testimony, unsupported by circumstances, and the other party to the deed should deny all fraud or imposition, we doubt if any Court would be justified in setting aside such deed, although the plaintiff might be a man of the highest standing, and the defendant the greatest criminal in the community.

But we do not agree with counsel in the estimate which should be put on Sneath's testimony.   The most apparent discrepancy in the answer and testimony of Sneath is in regard to the claims he had assigned to him before he entered into negotiations with Bolan. He swears in his answer that, with claims in hand to the amount of $6,178.28, including his own, he entered into negotiations with Bolan, purchased the goods from him, and receipted claims to the amount of $5,422.   In his testimony, it turns out that the claims in his hands at that time amounted to only $5,549.05, exclusive of interest, which perhaps would have added some hundreds more to the amount.   Subsequently there were four small claims assigned to him, which in the aggregate amounted to $627.66.   Now it appears to us, the having stated in his answer that all these claims were in hand when he entered into negotiations, shows only negligence and want of care in making his statement.   It does not indicate any intention to falsely represent the facts, for he would have made just as strong a case for himself if he had said he entered into the negotiation with claims on hand to the amount of $5,549 as he does by

saying the claims amounted to $6,178.28.   In his answer he seems carelessly to have included in the amount of accounts alleged to have been in his possession when the negotiation commenced four small accounts, which were subsequently assigned him.   But it seems clear that he had in his hands, at the commencement of the negotiation with Bolan, accounts to an amount greater than the consideration mentioned in the bill of sale.   Counsel point out some other apparent discrepancies, which we think equally unimportant.   The bill of sale declares that the sale was made " to have and to hold the said goods and property unto the said R. G. Sneath, his executors, administrators and assigns, to his and their own proper use and benefit forever."   Now, if the goods, etc., were assigned to pay only such claims as were then assigned to Sneath, it was legally for " his own proper use and benefit," for these claims were legally his.   But if the assignment was generally for the benefit of all Bolan & Co.'s creditors, then it was not for the " proper use and benefit of Sneath."

To make this an assignment in trust, it was necessary to contradict the deed.   This could not be done directly by showing that it was the intention of the parties that the deed, which was absolute on its face, should only operate as an assignment in trust.   But if it could be shown under proper pleadings that Sneath had induced Bolan to sign the absolute bill of sale by *fraudulently* representing to him that under that bill of sale all the creditors would be entitled, or would be allowed to come in for their *pro rata* share of the proceeds, then the law would raise a trust in favor of the other creditors. But, as we have heretofore in effect said, the sole testimony of Bolan, unsupported by circumstances, cannot establish that fraud in the face of his own deed, which clearly expresses the purpose for which it was given; and, in opposition to the testimony of Sneath, who says the deed was given for the purposes mentioned on its face, and utterly denies any promise on his part to hold those goods in trust for any person; but, on the contrary, states positively he held them to satisfy certain claims which were legally his own, having been assigned to him.

The only circumstance tending to corroborate Bolan in his statement, and which is proved by another witness than himself, is this:

his partner Smith says that when Bolan asked him to sign the bill of sale, in the presence of A. L. Edwards, (Sneath's agent) he stated the assignment was made to pay all the creditors *pro rata.* But Smith does not even assert that Edwards heard this remark, but admits Bolan may have taken him aside to say this.   Then, as we said in our original opinion, this is simply the declaration of Bolan, and is entitled to very little, if any weight, in supporting his version of the transaction.

The rule that an Appellate Court will not disturb a judgment founded on a verdict where the testimony is conflicting, does. not apply to a Chancery case tried by the Court without a jury. More especially, if the finding of the Court below is based on testimony contained in depositions, will this Court look into the testimony as if it were an entirely new case.   There is no reason why this Court may not judge as well as the Court below of the weight and effect to be given to depositions.   .

To prove that a deed absolute on its face was given in trust for other purposes than those mentioned in the deed, is not to prove a new and distinct contract, but to vary and contradict the terms of the deed, which is inadmissible.

.There is nothing in the case of *Pierce* v. *Robinson,* 13 Cal., which conflicts with these views.   That case decides, on ample authority, that when a deed is absolute on its face, it may still be proved that the real transaction was intended as a mortgage to secure a debt.   But these decisions are really based on an exception to, or qualification of, a general rule.   In such case, the nominal vendor is allowed to show not what was said about the intention of the parties, the object of the deed, etc., but is allowed to prove the distinct and substantive fact that he was in debt to the nominal vendor at the time he made the deed, either on some past transaction or for some credit given at that time, and that the debt still exists.   If these facts are proved, the law declares that the deed shall only operate as a mortgage.   In other words, the law under such circumstances gives the vendor an equity in spite of his contract to the contrary.

But the rule in regard to mortgages is peculiar, and does not apply to other instruments. ·

That Courts of Equity may inquire into the object which induced parties to enter into contracts, and may restrain a party from making fraudulent use of a contract, we have no doubt. But when it is attempted to show that the object which induced the execution of a deed is wholly different from that expressed on its face, then the proof must be clear and satisfactory; for the law will presume that the deed expresses the real transaction between the parties. Not only must it appear that the deed was intended to take effect differently from what is expressed on its face, but it must appear that one of the parties is making some fraudulent use of the deed, before a Court of Equity can interfere in the matter. Under all ordinary circumstances, when a man deliberately enters into a contract under seal, he must abide by the letter of the deed. If it could have been shown here by competent proof that Sneath induced Bolan to make this absolute bill of sale by promising to hold the goods in trust for all the creditors, and that he afterwards converted the goods to his own exclusive use, this would have been fraud. A trust would have arisen in favor of other creditors of Bolan, and relief might have been granted. But the evidence offered was wholly insufficient to establish these facts in opposition to the force of the deed.

A rehearing is denied.