[No. 2266]

ALEXANDER C. FORSYTH, RESPONDENT, *v.* J. H. HEWARD, AS ADMINISTRATOR OF THE ESTATE OF JANE FORSYTH, DECEASED; GEORGE ROBSON, JANE LAW, JAMES PATTISON, ANDREW PATTISON, JOHN PATTISON, J. H. HEWARD, THERESA HEWARD, AND SOPHIA G. BLUM, APPELLANTS.

[170 Pac. 21]

1. WITNESSES—COMPETENCY—STATUTE.

Under Rev. Laws, 5419, declaring that no person shall be allowed to testify when the other party to the transaction is dead, or when the opposite party to the action or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person when the facts to be proven transpired before the death of such deceased person, testimony of the mother of plaintiff who was adopted by the testatrix and her husband, in a suit against the testatrix's executor to enforce specific performance of alleged contracts by which plaintiff was to inherit any property of which testatrix and her husband might die possessed, it appearing that testatrix's husband conveyed all his property to her, as to matters relative to the alleged agreement transpiring before the death of the testatrix, all of which tended to establish the alleged contract of adoption, is inadmissible.

2. WITNESSES—COMPETENCY—STATUTE.

In such case testimony by plaintiff's own father concerning acts and conduct of testatrix and her husband when they went to his house to get plaintiff is also inadmissible under Rev. Laws, 5419; for it would be a mere evasion to allow testimony as to acts when testimony as to transactions with deceased persons is inadmissible.

3. WILLS—AGREEMENT TO MAKE—EVIDENCE—SUFFICIENCY.

> In a suit to specifically enforce a contract that plaintiff who was adopted by testatrix and her husband should inherit whatever property they might die possessed of, evidence *held* insufficient to show more than the adoption of plaintiff, and not to establish the agreement as to the inheriting of property.

4. ADOPTION—EFFECT—RIGHT OF ADOPTED CHILD.

> An adopted child acquires no greater right of inheritance than a natural child, and the adoption does not deprive the adoptive parent of the right to dispose of his property by will.

5. SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY.

> One seeking specific performance of a contract whereby he was to inherit the property of others has the burden of proof, and specific performance will be denied unless the contract is established by clear and satisfactory evidence.

APPEAL from Second Judicial District Court, Washoe County; *J. Emmett Walsh*, Judge.

Action by Alexander C. Forsyth against J. H. Heward, as administrator of the estate of Jane Forsyth, deceased, and others. From a judgment for plaintiff, defendants appeal. **Reversed,** and remanded for new trial.

*James T. Boyd* and *Ayres & Gardiner*, for Appellants:

An agreement to adopt is not of itself an agreement to convey. "By the weight of authority the laws permitting the adoption of children confer on them simply the ordinary rights of inheritance, and do not affect the power of the adoptive parent to dispose of his property by will." (1 C. J. 1396.) "An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to other persons than the child to be adopted." (1 C. J. 1378; *Melaney* v. *Cameron*, 161 Pac. 1180; *Townsend* v. *Perry*, 164 N. Y. Supp. 441.) "A contract to adopt a child is one thing and a contract to make a will in the child's favor is another. If a child is adopted it is entitled to inherit as an heir, if the adopting party should die intestate; but it is liable to be cut out by will, as one's own child is." (*Grantham* v. *Gossett*, 182 Mo. 651; *Davis* v. *Hendricks*, 12 S. W. 887; *Westerman* v. *Schmidt*, 80 Mo. App. 344; *Dickin* v. *McKinley*, 163 Ill. 318; 1 C. J. 1379.) Under our statute, as elsewhere, an adopted child's rights are no greater than those of a natural child. (Rev. Laws, 5830.)

Not only the plaintiff's contract, but its terms, must be established by evidence which is clear, satisfactory, cogent and convincing. Some states refuse the remedy altogether. (36 Cyc. 675, 692; 1 C. J. 1379; *Strange* v. *Crowley*, 91 Mo. 287; *Taylor* v. *Von Schraeder*, 107 Mo. 206; *Richardson* v. *Orth*, 40 Or. 252; *Jones* v. *Patrick*, 145 Fed. 440; *Hubbard* v. *Hubbard*, 140 Mo. 300; *Wolfinger* v. *McFarland*, 67 N. J. Eq. 687; *Ross* v. *Ross*, 137 N.W. 1034.)

"Evidence in support of a decree for specific performance must leave no room for reasonable doubt in the mind of the chancellor." (*Missouri P. R. Co.* v. *McCarty*, 97 Mo. 214.)

In cases where there is a will a contract to adopt will not upset it. An agreement to make one an heir is not sufficient. Plaintiff must prove a contract to convey or leave property. (*Davis* v. *Hendricks*, 12 S. W. 887; *Asbury* v. *Hicklin*, 81 S. W. 393.)

The trial court erred in permitting plaintiff to testify, over objection, to any matters which happened before the death of Jane Forsyth. Defendant Heward, as executor, and others as devisees, are the representatives of a deceased person. Plaintiff being the opposite party could not testify. Disqualification goes to witness and excludes him from testifying to anything except "incidental and preliminary matters." (*Higgs* v. *Hansen*, 13 Nev. 357; Rev. Laws, 5419; *Roney* v. *Buckland*, 4 Nev. 45, 55, 57; *Burgess* v. *Helm*, 24 Nev. 242.)

That the law will not allow testimony of circumstances by witnesses disqualified to testify directly is thoroughly established. (*Parker* v. *Ballard*, 51 S. E. 465; *Cash* v. *Kirkham*, 55 S. W. 18; *Lodge* v. *Train*, 63 Atl. 233; *Cowan* v. *Musgrave*, 35 N. W. 496; *Harring* v. *Harring*, 62 N. W. 666; *Knight* v. *Everett*, 67 S. E. 328; *Knight* v. *Russ*, 19 Pac. 698; *Ruley* v. *Sweeney*, 60 S. W. 574.)

*Dixon & Miller* and *W. L. Hacker*, for Respondent:

The complaint sets out certain contracts made between the natural parents of the boy, Alexander Forsyth, and the deceased, John Forsyth, and his wife, Jane Forsyth, whereby the natural parents surrendered and gave up their son to the said Forsyths, who agreed and promised

that they would adopt the boy as their own son, and that on their death he would become entitled to and inherit and have all the property of which they might be possessed at the time of their death. Plaintiff must prove the contracts, but it is not necessary that they be proved in any particular manner. Such agreements, either express or implied, are enforcible, and they may be established by circumstances. The adoptive parent may deprive himself of the power to dispose of his property by a contract binding him to give the adopted child a certain share of his property. An agreement, either express or implied, to give the adopted child a certain portion of the adoptive parent's property will be enforced. (1 C. J. 1378, 1379, 1396.) "Contract to make the child equal heir with other children will be enforced." (*Nowack* v. *Berger*, 31 L. R. A. 810.) "An agreement to make the adopted child the sole heir of the adopting parents may be enforced, although the instrument is insufficient to create an adoption." (*Fuselier* v. *Masse*, 4 La. 423.)

By the Court, COLEMAN, J.:

Plaintiff by this action seeks the specific performance of two alleged contracts. The complaint alleges that the plaintiff is the issue of the marriage of Wm. T. Bacon and Harriet G. Bacon, now Harriet G. Murdock; that two agreements of adoption were entered into whereby it was understood and agreed that John T. Forsyth and his wife, Jane Forsyth, "would adopt him [plaintiff] as their own son, and promised and agreed that on their deaths he would become entitled to and inherit and have all of the property of which they might be possessed at the time of their deaths"; that in pursuance of such agreement plaintiff was given to the said Forsyths, and that they gave him their name, reared and educated him; that said Forsyths made one or more futile attempts to adopt plaintiff; that John Forsyth died in 1907, but prior to his death conveyed his property to his wife, Jane Forsyth, who died in 1913.

The answer denies all of the material allegations pertaining to an agreement to adopt and of plaintiff's right to take the property of the Forsyths, and pleads affirmatively that Jane Forsyth, prior to her death, made and executed her last will and testament, whereby she disposed of her property to parties other than the plaintiff, and nominated and appointed the defendant Heward as executor of her estate; that said will had been admitted to probate; and that the defendant Heward had qualified as executor thereof.

1. It is insisted on behalf of defendants that the court erred in permitting the natural mother of the plaintiff to testify in his behalf relative to certain matters and things which transpired before the death of John and Jane Forsyth and pertaining to the contract sought to be established by the plaintiff, upon the ground that such testimony should have been excluded in pursuance of section 5419, Revised Laws, which provides:

"No person shall be allowed to testify:

"1. When the other party to the transaction is dead.

"2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person."

This court, in *Torp v. Clemons,* 37 Nev. 483, 142 Pac. 1115, in considering a very similar question, laid down what we believe to be a sound doctrine, and one which must guide us in determining the question now before us. In that case, in determining the propriety of admitting testimony of a witness as to transactions between himself and a deceased person, it was held that the following elements must concur and be apparent:

"First, the witness must belong to a class which the statute renders incompetent; second, the party against whom the testimony is to be offered must belong to a class protected by the statute; and third, the testimony itself must be of a nature forbidden by the statute."

The question, then, is: Does the testimony admitted in evidence violate the rule enunciated? Plaintiff's mother was permitted to testify to numerous circumstances which transpired prior to and after the plaintiff went to live with the Forsyths, in which the Forsyths played a part, all tending to establish the alleged contract of adoption, and among such testimony was evidence to the effect that, at the request of the Forsyths, she went with them and the plaintiff to a notary public to have adoption papers prepared, and was informed by the notary that such papers would have to be prepared by another. We think the court erred in not sustaining an objection to this testimony, for the reason that the witness testified squarely to a circumstance growing out of an alleged request of the deceased parties, who are dead and cannot give testimony concerning the same, or as to that which it is contended transpired as a consequence thereof.

2. Error is also assigned to the ruling of the court upon an objection to certain testimony given by the natural father of the plaintiff concerning certain acts and conduct of the Forsyths when they went to the house of the witness to get the plaintiff, tending to establish plaintiff's cause of action. Testimony of this character is as much a violation of the letter and siprit of the statute as to permit testimony of what was said by the deceased parties. It is an old saying that, "Actions speak louder than words," and it was clearly error on the part of the court to permit one of the parties to the alleged contract to testify to anything which transpired between the parties tending to establish plaintiff's cause of action, in view of the fact that the other parties were dead.

3. It is next contended that the evidence does not sustain the judgment. From a careful reading of the record we are of the view that the trial judge, in his written opinion, stated the evidence as strongly in favor of the plaintiff as it will permit, and hence we quote at

length all that is contained in that opinion relative to the evidence in the case. It reads:

"In September, 1885, when the first contract was entered into, as alleged in the amended complaint, the custody of the plaintiff was surrendered by his mother to John F. Forsyth and Jane Forsyth, his wife, in whose custody he remained continuously, except during the period he was with his father. It was while he was in the custody of his father in 1890, at Reno, Nevada, the second alleged contract was entered into, and the custody of the plaintiff was surrendered by his father to John F. Forsyth and Jane Forsyth, his wife, in whose custody he remained. John F. Forsyth died on February 6, 1907, but prior to his death he conveyed all of his property to Jane Forsyth, his wife. Jane Forsyth died on April 26, 1913, leaving a last will and testament, which has been admitted to probate in this court, in which no provision was made for plaintiff, and the said Jane Forsyth bequeathed to other parties the property that came to her from her husband, the said John F. Forsyth.

"The evidence in this case shows that John F. Forsyth, Jane Forsyth, his wife, plaintiff, and his mother called to see Richard Martin, when plaintiff was very small, with reference to having adoption papers prepared and both of the Forsyths stated to him they were there for the purpose of adopting the boy; that his mother gave him to them to adopt, as they had no children of their own, and called the boy theirs.

"H. Lund testified the Forsyths said they took the boy to raise; that they took to adopt as their own.

"H. R. Brown testified Mr. Forsyth introduced plaintiff to him as his son.

"Ross Peterson testified of Mr. Forsyth speaking of plaintiff as his boy.

"Herbert E. Watts testified Mrs. Forsyth told his mother they had adopted the boy.

"William Watts testified he had a conversation with

Mrs. Forsyth directly after 1885, in which she said she liked the boy and wanted to keep him as long as he lived and as long as they lived.

"To Mary A. Dickinson the Forsyths referred to plaintiff as their own and said he was there to stay. Both said the boy was theirs; had taken him to raise; spoke of how much they thought of him, how handy he was, and how much he could do for them; also that in a conversation with Mrs. Forsyth she said that Mr. Forsyth said the affairs were settled now, and for her to see that he was not forgotten; that what was left was supposed to be his; that his wish was for Alex to get the property, and wanted Mrs. Forsyth not to forget him. This was said after Mr. Forsyth's death.

"It appears from the time plaintiff went to the Forsyths he has always gone by the name of Forsyth and always called them Father and Mother. The fact that he was not their son was not mentioned to him, and it does not appear when he first learned they were not his parents.

"The fact in issue is whether either or both of the contracts alleged in the amended complaint were made. Plaintiff contends he has established the contracts pleaded by him in his amended complaint and the full and faithful performance of all on his part thereof, while defendants contend that no such contract or contracts have been established. It is essential that a contract be established substantially as claimed by plaintiff. Such a contract may be established by circumstances, but these must be strong and satisfactory.

"On two different occasions, as it appears from the testimony, the Forsyths were ready and willing to have the necessary and proper adoption papers taken out, and plaintiff's parents should have seen to it that it was attended to. A little attention to the matter then on their part would have avoided the trouble and litigation at this date, and the reason given by plaintiff's mother when she found it would be necessary to go to Susanville, Cal., for this purpose was that she was postmistress and could not get away, but on the second occasion,

in 1890, no sufficient excuse can be offered by the father of plaintiff for not seeing to it and having the matter properly attended to. If plaintiff's parents were in this respect derelict in their duty, would it be right to cause the plaintiff to suffer for their seeming negligence, for in a case like this, where the alleged agreement was for the adoption of a young child, who was taken into the family and raised, the child could not be expected to see to the issuance of adoption papers.

"It also appears that first one and then the other of the Forsyths stated to disinterested parties that plaintiff was their boy; they had taken him to adopt, and even went so far as to say they had adopted him; also what they had would be his. Then in 1890, when plaintiff was in the custody of his father, they threatened legal proceedings in order to regain his custody. The testimony covers a period of thirty years, and it is not likely the witnesses could remember everything that was said during that time.

"The evidence upon which plaintiff relies to prove the alleged contracts consists of admissions and declarations made by John F. Forsyth and Jane Forsyth, his wife, during their lifetime. The value of admissions as evidence depends on the circumstances under which and to whom and when they were made. Here it appears, when plaintiff was very small, in company with his mother and John F. Forsyth and Jane Forsyth, his wife, they called upon Richard Martin, who was a notary public, living at Summit, Cal., for the purpose of having him prepare adoption papers; the Forsyths stating they were there for the purpose of adopting the boy who had been given to them by his mother for that purpose. They had no children of their own, and were about 40 years old at the time."

From a reading of the record, as well as from this statement of the evidence, we are of the opinion that no stronger deduction can be made than that a contract of adoption simply was entered into. There is no evidence tending to show an agreement to the effect that plaintiff should become the owner of whatever property the

Forsyths might own at the time of their death. The strongest testimony tending to sustain such a contention was that given by the witness Mary A. Dickinson, to the effect that Mrs. Forsyth said to the witness that Mr. Forsyth had said to Mrs. Forsyth:

"The affairs were settled now, and for her to see he [the plaintiff] was not forgotten; that what was left was supposed to be his; that his wish was for Alex to get the property, and wanted Mrs. Forsyth not to forget him."

But this is not evidence of a contract that he should become the owner of property upon the death of the Forsyths. If it indicates anything, it is simply that Mr. Forsyth thought, in view of the relation which had existed, that plaintiff deserved consideration at their hands. In concluding his opinion, the trial judge said:

"From the testimony introduced on the trial of this case it clearly appears that John F. Forsyth and Jane Forsyth, his wife, entered into the contracts with the plaintiff's father and mother for his adoption, and that plaintiff is entitled to a specific performance of the same, which entitled him to the property owned by Jane Forsyth at the time of her death, and that findings and decree should be prepared accordingly, and for costs of suit."

4. From this it will be seen that the judge based his conclusion that plaintiff was entitled to a decree of specific performance upon the theory that a contract of adoption simply had been entered into, and not upon the theory that he should become the absolute owner of the property of the Forsyths upon their death. The courts are almost unanimous in holding that an adopted child acquires no greater right than a natural child, that of inheritance, and that such adoption does not deprive the adoptive parent of the right to dispose of his property by will, unless he is deprived of such power by a contract binding him to give his property to the adopted child. (1 C. J., sec. 122, p. 1396.)

5. But conceding, for the purposes of this case, that

the findings of the court are sufficient to sustain the judgment, we are clearly of the opinion that the findings are against the evidence. It is a well-established rule that the burden of showing, by clear and satisfactory evidence, a contract which it is sought to have specifically enforced, rests upon the party who sets up and asks its enforcement, and unless this is done specific performance will not be decreed. (*Strange* v. *Crowley,* 91 Mo. 287, 2 S. W. 421; *Taylor* v. *Von Schraeder,* 107 Mo. 206, 16 S. W. 679.)

The Supreme Court of Oregon, in a suit for the specific performance of a contract to will property, quotes approvingly the following language:

" 'In this class of cases,' says Barrett, J., in *Gall* v. *Gall* (Sup.) 19 N. Y. Supp. 332, 333, 'the ordinary rules which govern in actions to compel the specific performance of contracts, and which furnish reasonable safeguards against frauds, should be rigidly applied. These rules require that the contract be certain and definite in all [of] its parts; that it be mutual, and founded upon an adequate consideration; that it be established by the clearest and most convincing evidence. Even then, when the contract limits a man's right to dispose of his property by will, it is regarded with suspicion, and enforced only when it is apparent that the hand of equity is required to prevent a fraud upon the promisee.' " (*Richardson* v. *Orth,* 40 Or. 263, 66 Pac. 930.)

In the case of *Jones* v. *Patrick,* 145 Fed. 440, Judge Hawley quotes approvingly as follows from *Morrow* v. *Matthew,* 10 Idaho, 423, 79 Pac. 197:

"The courts have quite generally held that, in order to enforce the specific performance of a parol contract, it must be clearly and satisfactorily shown to the trial court as to its execution and the terms and conditions thereof. If the contract has not been reduced to writing, it must of necessity require a greater weight of evidence to establish its existence, and the terms and conditions thereof, and in those respects satisfy the mind of the court, than if the contract were in writing

and produced in evidence. * * * Neither the amount of testimony, nor its contradictory or corroborative nature, constitute the leading or controlling elements in satisfying a court or jury as to the existence or non-existence of the fact in issue. It is rather the convincing character and quality of the evidence concerning the particular fact in dispute."

The general rule which we think controls in such cases may be found in 36 Cyc. 692, and reads:

"The rules as to the weight of evidence are applied with the utmost strictness to oral contracts to devise the whole or part of an estate. Such contracts are viewed with suspicion by the courts, and must be established by the clearest and most convincing evidence. In these, as in other contracts, one party to which is deceased, the defendant heirs or devisees are under the disadvantage that they are deprived by his death of their most important testimony. In such contracts the proof, in addition to inferences from the situation, circumstances, and relations of the parties, must generally consist of evidence of verbal declarations made by the deceased to third persons. This is a kind of evidence which the law recognizes as weak and unsatisfactory, and to be scrutinized with care. Vague admissions, mere declarations of an intention to confer a benefit, loose and unconnected statements made to different persons at various times in chance conversations, do not, unless well corroborated, furnish proof of such a character as will warrant specific performance of an oral contract or gift."

In considering evidence offered to support an alleged contract similar to the one contended for in this case, the Court of Appeals of New York, in the case of *Hamlin* v. *Stevens*, 177 N. Y. at page 50, 69 N. E. at page 121, said:

"Such contracts are dangerous. * * * Unless they are established clearly by satisfactory proofs and are equitable, specific performance should not be decreed. We wish to be emphatic upon the subject, for we are

impressed with the danger, and aim to protect the community from the spoliation of dead men's estates by proof of such contracts through parol evidence given by interested witnesses."

We do not think there is any evidence in the record even tending to sustain a conclusion of greater force and effect than that the Forsyths agreed to adopt the plaintiff, and certainly the evidence entirely fails to measure up to the requirements necessary to establish a contract to the effect that the plaintiff was to become the owner of whatever property the Forsyths might leave at their death.

For the reasons given, it is ordered that the judgment and order appealed from be reversed, and that the case be remanded for a new trial.

McCARRAN, C. J., concurring:

I concur in the order and in the opinion of Mr. Justice COLEMAN.

This action was primarily an action for specific performance. The cause rested upon two parol agreements alleged to have been entered into, the first by John and Jane Forsyth and Harriet G. Murdock, the natural mother of respondent, the second by John and Jane Forsyth and William T. Bacon, the natural father of respondent. Each of the parol agreements, according to the allegations of the complaint of respondent and according to the theory of his counsel, consisted of two elements: First, an agreement on the part of the Forsyths to adopt Alexander C. Forsyth; and, second, an agreement to leave to Alexander C. Forsyth, the respondent, all property of which John and Jane Forsyth died possessed. Enough is stated in the first section of the amended complaint to correctly set forth the position of respondent. It recites:

"That William T. Bacon and Harriet G. Murdock were married in the year 1879, and the plaintiff, Alexander C. Forsyth, was born to them on the 25th day of March, 1882; that after the birth of the said Alexander

C. Forsyth, the said William T. Bacon and Harriet G. Murdock were divorced, and by mutual consent the care and custody of the said Alexander C. Forsyth was given to and assumed by the said Harriet G. Murdock; that thereafter and during the year 1882 the said Harriet G. Murdock was married to Jonathan B. Roberts; that thereafter the said Harriet G. Murdock, with her child, the said Alexander C. Forsyth, visited the home of John F. Forsyth and Jane Forsyth, now deceased, who then resided on a ranch in Lassen County, State of California, and that the said Harriet G. Murdock left her son, the said Alexander C. Forsyth, with the said John F. Forsyth and the said Jane Forsyth during an illness from which she, the said Harriet G. Murdock, then Harriet G. Roberts, was suffering; that during such time the said Forsyths, and particularly the said Jane Forsyth, became greatly attached to the said Alexander C. Forsyth, and desired to keep the boy and adopt him as their own child, in and about the month of September, 1885, and requested the said Harriet G. Murdock that she give her son to them, the said Forsyths; that the said John F. Forsyth and Jane Forsyth then and there undertook, promised, and agreed to and with the said Harriet G. Murdock that, if she would give them her said son, the said plaintiff, Alexander C. Forsyth, they would adopt him as their own son, and promised and agreed that on their deaths he would become entitled to and inherit and have all the property of which they might be possessed at the time of their deaths; that in consequence of such undertaking, promise, and agreement on the part of the said John F. Forsyth and Jane Forsyth, the said Harriet G. Murdock gave her said son to the said Forsyths, with the express intention of improving the condition and prospects of her said son, and they thereupon took and kept the said plaintiff, Alexander C. Forsyth, gave him their own name of Forsyth, had much affection for him, treated him as their son, brought him up as their own child, educated him, and introduced him as their own child."

Section 2 of the complaint recites as to the agreement between the Forsyths and William T. Bacon at a subsequent date; such agreement being of similar import to that averred in the first section.

It appears to me to be well established by a line of competent evidence that a parol agreement to adopt was made between the Forsyths and the natural parents of respondent. The trial court so found, and in this finding he was, as I view it, amply supported by the facts presented. The proof in this respect meets the test. The second phase of the agreement, namely, to leave to respondent the property of which the Forsyths should die possessed, is not supported by the evidence to that degree of cogency required by the rule applicable to such matters, as that rule has been established and maintained by an almost overwhelming line of authority. The strongest element of proof found in the record which goes to support the contention of respondent as to this phase of the agreement is that furnished by the witness Mary Dickinson, wherein were recited utterances made by Jane Forsyth some years prior to her demise. It was expressed by the witness thus:

"She said that Mr. Forsyth · said that Alex [the respondent] had been very good to them and had spent his time and money on them. The affairs were settled now, and for her to see that he would not be forgotten; that what was left was supposed to be his."

Again and again writers of the law have given expression to the doctrine that specific performance of a parol contract will be decreed only when the contract itself, as well as the terms thereof, have been clearly proven.

In the matter of estates of deceased persons especially, courts have zealously guarded the avenues by which fraud or misrepresentation might find entrance. Some authorities have gone so far as to say that, where an oral contract is relied upon, the evidence to establish the same must be overwhelming in its probative force. Indeed, it has been asserted by some authorities that such contracts must be so proven as to leave no room for

reasonable doubt. (*Missouri Pac. Ry Co.* v. *McCarty,* 97 Mo. 214, 11 S. W. 52.) The probative force of the testimony of the witness Mrs. Mary Dickinson, giving every word thereof full significance, is not, in my judgment, commensurate with the rule. "What was left was supposed to be his" was testified to as being the assertion of John Forsyth, deceased, repeated to the witness by Jane Forsyth. It would require a long and tortuous stretch of imagination to convert this language into an expression signifying prior established contractual relations. I have already expressed myself as to the first element of the contract, namely, that of adoption. Assuming that a contract for adoption was established as having been entered into between the Forsyths and the natural parents of respondent, the most that can be said is that as a consequence thereof the right of inheritance would flow to respondent. In this, however, he would take no greater right than that of a natural child. If Jane Forsyth had died intestate, then as a consequence of the establishment of a contract to adopt the respondent would have become an heir at law to the estate of the deceased. It is established in this case that Jane Forsyth left a will making disposition of the property of which she died possessed. If the contract of adoption had primarily been established as having been entered into between the Forsyths and the natural parents of respondent, the respondent could have availed himself of the remedy to establish his heirship. Such, however, is not invoked by an action for specific performance.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.