ALICE ROBB TALLMAN, APPELLANT, v. FIRST NATIONAL BANK OF NEVADA, A CORPORATION, AS ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF FREDERICK J. CAVANAGH, ALSO KNOWN AS FREDERICK JEROME CAVANAGH, DECEASED, RESPONDENT.

Nos. 3567, 3568

July 8, 1949.                    208 P.2d 302.

250

*Chas. L. Richards,* of Reno, for Appellant.

*John S. Belford,* of Reno, for Respondent.

**OPINION**

By the Court, EATHER, J.:

Action by Clement D. Robb against First National Bank of Nevada, as administrator, c. t. a. of the estate of Frederick J. Cavanagh, deceased, and by Alice Robb Tallman against the same. From a judgment for defendant and an order denying plaintiff's motion for a new trial in each case, plaintiffs appeal. Upon stipulation and order the appeals were consolidated.

In 1934 plaintiffs, their sister, Anna Robb Cavanagh, three other brothers and sisters and a niece, owned certain improved real property in Reno, Nevada, each owning an undivided one-seventh interest therein. In that

year the niece, Virginia A. Bernard, commenced an action against the other co-owners of the property for partition and an accounting of the rents and profits thereof.

After negotiations, Virginia A. Bernard agreed to give up all claim to said property if she were paid the sum of $2,500. Anna Cavanagh told her co-owners that she did not have sufficient money to settle with the niece and that the bank would not lend money upon the security of the property unless it was in her name. At that time, and on March 23, 1935, Mrs. Cavanagh had on deposit in a bank the sum of $5,793.24, and her husband, Frederick Cavanagh, had on deposit the sum of $3,623.71.

On March 23, 1935, each other co-owner conveyed by deed his and her interest in said property to Mrs. Cavanagh. On the same day appellant Tallman executed and delivered to Mrs. Cavanagh a general release and entered into a written contract with her under the terms of which said appellant was to continue to occupy a portion of said premises rent free so long as she cared for Frank Robb, her brother.

On the same day appellant Robb executed and delivered to Mrs. Cavanagh a similar release and the parties entered into a written contract. This contract provided for the execution and delivery of said release and deed and in consideration therefor, Mrs. Cavanagh agreed to forgive his indebtedness to her in the amount of $2,427.-49, and to give him a promissory note in the amount of $800. Thereafter Mrs. Cavanagh borrowed the necessary money from the bank and settled the action brought by the niece.

In addition to the foregoing the complaint in the Tallman action alleges:

"That at said time said Anna Cavanagh promised plaintiff that if she would give her a deed to her interest in said property she, Anna Cavanagh, would release the claim she held against her, and in addition thereto she

would, by will, create a life estate in the lands and premises (above mentioned) * * * for the use and benefit of plaintiff."

The complaint in the Robb action alleges:

"That at said times, said Anna Cavanagh promised plaintiff that if he would give her a deed to his interest in said property, she would execute and deliver to him a promisory note in the sum of Eight Hundred ($800.00) Dollars, which she would to able to, and would pay as therein provided, and as further consideration she would hold and preserve for him his said interest in said property, that he would always have a home with her or place to live free of rent, and that she would, by will, create a trust fund with sufficient security to adequately take care of plaintiff during his entire remaining life."

Both complaints then allege that Mrs. Cavanagh repeated these promises at various times; that she died on November 25, 1946, and left a will under which all her property, including said real property went to her husband, Frederick J. Cavanagh; that a few days prior to her death she extracted a promise from him to carry out her promises to plaintiffs; that thereafter on various occasions Mr. Cavanagh assured plaintiffs that he would carry out said promise; that Mr. Cavanagh died cn October 25, 1947, without having carried out said promises and left a will under which all his property went to his brothers and sisters; that respondent was appointed administrator c. t. a. of his estate; that plaintiffs filed claims with said administrator based upon the foregoing, which were rejected.

Appellants seek to impress a trust upon the assets of the estate of Frederick J. Cavanagh, deceased, now in the hands of respondent as administrator, for the purpose of carrying out the alleged promises of Mr. and Mrs. Cavanagh.

Among other things the lower court found that the release and contract, in each case, constituted the entire

understanding of the parties; that there were no agreements or representations by or between the parties other than as therein set forth; that a few days prior to the death of Anna Cavanagh she invoked from her husband a promise to carry out her promise and that there was no evidence as to what her promise was.

Many of appellant's assignments of error deal with the exclusion of testimony sought to be elicited from them relative to transactions between them and decedents. They take the position that since, under their theory of the cases, the actions were not upon a claim or demand against the estate but to impress a trust upon certain of the assets comprising it, appellants should have been permitted to testify as to such transactions. To sustain this position numerous California cases are cited. These cases are not in point for the reason that their statutory background is dissimilar to that of the cases at bar. Our statutes provide:

"No person shall be allowed to testify:

"1. When the other party to the transaction is dead.

"2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person: * * *." Sec. 8966, N.C.L.1929.

"The following persons cannot be witnesses: * * *

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person." Sec. 8970, N.C.L.1929.

The only statute of California dealing with this matter is sec. 1880, Code of Civil Procedure, which is identical to sec. 8970, N.C.L.1929, quoted above. All the cases

relied upon by appellants are based upon this section only and no consideration is given by them to a statute similar to sec. 8966, N.C.L.1929.

At one time sec. 393 of the Practice Act of California contained provisions identical to those found in our sec. 8966, supra, Davis v. Davis, 26 Cal. 23, at page 34, 85 Am.Dec. 157, but the section was repealed in 1870. See 11 Cal.Jur. 804.

As was said in Booth v. Pendola, 1890, 88 Cal. 167, 23 P. 200, 201, 25 P. 1101:

"It is to be observed that at one time a party was prohibited from testifying in *any* case where the adverse party was 'the representative of a deceased person,' as to facts which occurred before the death of the deceased. * * * The law was changed to the present provision, which is that a party cannot be a witness in an action against an executor or administrator 'upon a claim or demand against the estate of a deceased person.' " (Emphasis supplied.)

It is to be noted that in each case cited by appellants the prohibition of the statute was limited to actions involving "a claim or demand against the estate." No cases are cited which deal with the more comprehensive prohibitions contained in sec. 8966, N.C.L.1929. It is obvious that by repealing sec. 393 of the practice act the California legislature intended to remove the ban imposed thereby. Our legislature has not seen fit to repeal the comparable Nevada statute and like the former California statute it prohibits a party, as to facts occurring prior to death, "from testifying in any case where the adverse party was 'the representative of a deceased person' " or where, regardless of the nature of the action, "the other party to the transaction is dead."

■ The prohibition against a witness testifying when the other party to the transaction is dead, is all inclusive. As Judge FARRINGTON said in Bright v. Virginia & Gold Hill Water Co., D.C., 254 F. 175, 177:

"The Legislature undoubtedly used the term 'other

party to the transaction' advisedly. If it had intended 'when the other party to the contract,' or 'the other party to the suit' is a deceased person, it certainly would have said so."

It has been held, and properly so, that the test of transactions with deceased within a statute excluding testimony concerning transactions with deceased, is whether deceased, if living, could contradict the witness of his own knowledge.

■ The second paragraph of sec. 8966, in prohibiting testimony in an action against the representative of a deceased person, is equally inclusive—it is not limited to a "claim or demand" against the estate.

Forsyth v. Heward, 41 Nev. 305, 170 P. 21, 22, was an action against the administrator of an estate for the specific performance of two alleged contracts in which decedents had allegedly promised that they "would adopt him (plaintiff) as their own son, and promised and agreed that on their deaths he would become entitled to and inherit and have all of the property of which they might be possessed at the time of their deaths." The court there said:

"We think the court erred in not sustaining an objection to this testimony, for the reason that the witness testified squarely to a circumstance growing out of an alleged request of the deceased parties, who are dead and cannot give testimony concerning the same, or as to that which it is contended transpired as a consequence thereof.

" * * * it was clearly error on the part of the court to permit one of the parties to the alleged contract to testify to anything which transpired between the parties tending to establish plaintiff's cause of action, in view of the fact that the other parties were dead."

Torp v. Clemons, 37 Nev. 474, 142 P. 1115, 1118, was an action brought against a defendant as executor of a decedent's will and legatee thereunder to impress a trust upon certain assets of the estate. The court said:

"In view of the interpretation given to our statute in

the several decisions by this court, the witness Clemons, appellant herein, was properly precluded from testifying as to matters and things pertaining to any transactions between himself and the deceased, Overton."

■ The reason for the rule is well stated in Bright v. Virginia & Gold Hill Water Co., 9 Cir., 270 F: 410, 412, as follows:

"The whole object of the Code provision is to place the living and the dead upon terms of perfect equality, and, the dead not being able to testify, the living shall not."

The case of Burgess v. Helm, 24 Nev. 242, 51 P. 1025, relied upon by appellants, is not in point. That case involved an oral contract of employment between plaintiff and decedent. In the action against the administrator of decedent's estate, witnesses who were neither parties to the contract nor the action were permitted to testify as to the contract. Since appellants are parties both to the actions and to the alleged contracts, the situation is entirely different.

■ The rulings of the lower court excluding the testimony of appellants as to transactions between them and decedents were entirely proper.

■ There are numerous assignments of error dealing with the exclusions of testimony of witnesses who were not parties to the action or to the alleged contracts. Appellants sought to elicit from these witnesses testimony as to agreements and understandings between appellants and decedents prior to and contemporaneously with the execution and delivery of the deeds, releases and contracts referred to above, and at variance with the terms thereof. Such testimony was objected to upon the ground that it would have been in violation of the parol evidence rule. Under this rule all prior negotiations and agreements are deemed merged in the written contract, and parol evidence is not admissible to vary or contradict its terms.

"It is well settled, by a long line of decisions of this

court, that, when the parties reduce their contract to writing, all oral negotiations and stipulations are merged therein." Gage v. Phillips, 21 Nev. 150, 26 P. 60, 61, 37 Am.St.Rep. 494.

"The general rule is that, when parties have committed their agreements to writing, all oral negotiations and stipulations are embodied in the writing itself. Now, in this case, while it is contended that the fraud practiced was in obtaining the contract, the real matter relied upon goes to show an agreement different in terms from that signed by the parties. This is the veriest sophistry. To sanction this contention would be to permit the solemn written contract of the parties to be overthrown by showing that the parties agreed orally to something entirely at variance from the written contract. This cannot be." Nevada Mining & Exploration Co. v. Rae, 47 Nev. 173, 182, at page 193, 218 P. 89, 223 P. 825, at page 828.

"The invoked rule, though by custom called a rule of evidence, is in fact a rule of substantive law, as has often been explained. * * * When the plaintiff pleads that the writing (a release) does not express the intentions of the parties to it at the time, he pleads something which the law will not permit him to prove." Natrona Power Co. v. Clark, 31 Wyo. 284, 225 P. 586, 589.

"It would be hard to draw a more complete contract between two people than is contained in the release. While it does not specify any particular claim or thing released, it uses words generally used by the members of the bar when it is intended to include every matter of claim between the parties. We think such a release and agreement not subject to parol evidence." Donovan v. Hallowell, 140 Wash. 312, 248 P. 412, 413.

Appellants discuss at length the question of the admissibility of parol evidence where fraud is involved. In view of the record before us we do not deem it necessary to consider under what circumstances fraud will permit a relaxation of the rule since the law is quite

well established that a party relying upon fraud for this purpose must both plead and prove it.

"Where fraud or mistake is alleged and proved, it is then proper to admit testimony to show the real agreement between the parties, but it is not proper, simply on the allegation of fraud or mistake, and without proof to establish the averment, to permit parties to offer parol evidence to contradict the writing which purports to contain the contract between them." 32 C.J.S., Evidence, sec. 979, p. 952. See also Feusier v. Sneath, 3 Nev. 120.

If testimony as to parol understandings contrary to a written agreement were admissible to prove fraud and if the rule does not apply where fraud is proven, quite obviously we would have no parol evidence rule, for then, in each case evidence as to oral understandings would be admissible to contradict a written instrument.

■ It is only when independent facts constituting fraud are first proven that parol evidence is admissible.

"Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in Towner v. Lucas' Ex'r, 54 Va. (13 Grat) 705, 716, in which to express our conviction: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For reasons

founded in wisdom and to prevent frauds and perjuries, the rules of the common law exclude such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation cannot be regarded as existing in fact. Neither a court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it.' " Bank of America Nat. Trust & Savings Ass'n v. Pendergrass, 4 Cal. 2d 258, 48 P.2d 659, 661.

█ The complaints, after alleging various promises made to plaintiffs by each decedent, allege (paragraphs XX and XXIII, Robb complaint, and paragraphs IXX and XXII, Tallman complaint) that the same " * * * were, so plaintiff believes, made without any intention of carrying out said promises." There are no facts alleged upon which this belief is founded and consequently no proper pleading of fraud.

"As a general rule, it is not sufficient to charge a fraud upon information and belief (and here there is not even an allegation of 'information' without giving the ground upon which the belief rests or stating some fact from which the court can infer that the belief is well founded." Bancroft Code Pleading, vol. 1, page 79. See, also, Dowling v. Spring Valley Water Co., 174 Cal. 218, 162 P. 894.

█ █ On this point the proof is as insufficient as the pleading. As stated above, fraud is not established by showing parol agreements at variance with a written instrument and there is no inference of a fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed. 24 Am.Jur. 107; 23 Am.Jur. 888.

The complaints also allege that on or about March 15, 1948, plaintiffs discovered that at the time Mrs. Cavanagh made the alleged promises " * * * she had in her possession and under her control thousands of dollars, and that it was not at all necessary for her to obtain the transfer of the interest of plaintiff in said

property in order to obtain a loan in order to purchase the interest of her said niece. * * "

It is doubtful if such allegation is a sufficient pleading of fraud, but in view of the evidence we need not pass upon this question.

▆ The lower court found that on March 23, 1935, Mrs. Cavanagh had on deposit in a bank the sum of $5,793.24 and Mr. Cavanagh the sum of $3,623.71; that at the time of her death (November 25, 1946) she had on deposit the sum of $4,283.07 and at the time of his death (October 25, 1947) he owned stocks and bonds of the value of $37,083.71 and cash and cash items of the value of $19,345.64. It also found that for many years Mr. Cavanagh had been employed at a small salary and that for some years prior to his death he had been retired on a pension of approximately $100 per month. There is also evidence in the record that both Mr. and Mrs. Cavanagh promised appellants that they would "take care" of them.

This evidence falls far short of proof of fraud.

The fact that Mrs. Cavanagh had a bank balance of $5,793.24 does not mean that this sum or any portion thereof was not subject to prior commitments or that she was required to use her own funds to protect the interest of the other five owners of the property.

▆ This phase of the matter is a perfect example of the necessity for requiring the strongest, clearest and most convincing evidence to establish fraud in this class of cases. There may have been reasons why Mrs. Cavanagh did not feel that she could use her funds to settle the Bernard action and these may have been known only to herself and her husband. It would have been extremely difficult for respondent to show what they were more than thirteen years after the transaction in question, with the lips of both decedents sealed. Certainly fraud cannot be imputed to her by showing that her husband had funds at the time in question and at the time of his death.

Since fraud was not established, parol evidence of agreements at variance with the written instruments, was clearly inadmissible.

While there are certain other assignments of error they are without merit and a discussion of them would unduly prolong this opinion.

For the reasons given the judgments and orders appealed from are affirmed, with costs.

HORSEY, C. J., and BADT, J., concur.