[Civ. No. 8223. Second Appellate District, Division One.—September 21, 1934.]

L. D. LOSSON, Respondent, v. LOUIS M. BLODGETT et al., Appellants.

G. C. DeGarmo and W. M. Crane for Appellants.

Frank C. Shoemaker for Respondent.

WOOD (W. J.), J., *pro tem.*—Plaintiff obtained judgment in the trial court for the amount of certain installments claimed to be due under the terms of an instrument which he alleges to be a lease and which defendants allege to be an agreement for the purchase and sale of real estate. The land involved is situated in the republic of Mexico. The two defendants Louis M. Blodgett and N. A. Blodgett are husband and wife, and the judgment appealed from is against both of them. The instrument which is the basis of the action was signed by Mrs. Blodgett only, and the husband Louis M. Blodgett insists that, regardless of the question of the validity of the contract, he is not a party to it and is not legally bound by it.

Among the findings of the trial court are the following: "The said agreement was entered into for the mutual benefit

of Louis M. Blodgett and N. A. Blodgett, and that any benefits they derived by reason of the execution of said instrument were for the mutual benefit of the defendants, and their community property. . . . That the said Louis M. Blodgett represented to the plaintiff that he was contracting with the plaintiff for the lease upon said property, and that said Louis M. Blodgett made said representations for the purpose of deceiving said plaintiff and with the intent to get possession of said property, and to get possession of said property under the terms of said lease by and through the name of his wife N. A. Blodgett, and was with the intent of avoiding any liability on his part." Further findings are, substantially, that at the time of the execution of the agreement, plaintiff was eighty years of age and of limited business experience and that Louis M. Blodgett, who conducted all of the negotiations preceding the signing of the instrument, was of middle age and wide business experience. The plaintiff and both defendants were present when the document was signed. It is conceded that plaintiff read the instrument or that it was read to him. It is not claimed that he was unaware of its contents or that he was mentally incompetent. The name of Louis M. Blodgett does not appear at any place on the instrument. Under these circumstances it cannot successfully be contended that Louis M. Blodgett became bound to fulfill the terms of the contract. If plaintiff expected to hold Louis M. Blodgett under the contract he should have required him to sign as a party thereto. No false statements as to the existence of facts were made. Defendant Louis M. Blodgett did not become liable under the contract by reason of his having conducted the preliminary negotiations nor by reason of his having gained some benefit through his wife's execution of the instrument.

■ Defendants contend that the instrument sued upon is in reality an agreement for the purchase and sale of real estate and that it cannot be enforced for the reason that the constitution of Mexico prohibits defendants, American citizens, from owning realty in the territory in which the land in question is situated. The instrument was not prepared by a lawyer, a form of contract for conditional sales of automobiles being used by the parties. Plaintiff is referred to as lessor and defendant N. A. Blodgett as lessee.

It is set forth that the lessor "lets" to the lessee the property described, and this language thereupon appears: "The lessee agrees to pay to the lessor as rental for use of said property the sum of ($3,500.00) three thousand five hundred dollars, to be paid in the following manner: A credit for ($350.00) three hundred and fifty dollars which has already been paid, and ($150.00) one hundred and fifty dollars to be paid on the signing of this lease, and ($30.00) thirty dollars a month thereafter until the full ($3,500.00) three thousand five hundred dollars has been fully paid with the interest on the deferred payments at (7%) seven per cent per annum." Attached to the main instrument and separately signed by the parties are two contracts, each entitled "option to purchase on condition". In the first "option to purchase" it is provided that if the lessee complies with the terms of the lease, the lessor "will sell to the person hereinabove mentioned as lessee the above described property for the sum of ($1.00) one dollar." In the second "option to purchase" the "lessee" is given the option "to purchase the additional five acres, which the lessor owns in the above described tract . . . by paying to the lessor the additional sum of ($250.00) two hundred and fifty dollars".

We are of the opinion that the contract between the parties is in effect an agreement for the purchase and sale of real estate and that the trial court erred in construing it as a lease. It will be noted that no term whatever is mentioned in the instrument. ■ A valid lease of real property must set forth, in addition to the parties, a description of the premises and the rental to be paid, the *term* for which the property is demised. In *Levin* v. *Saroff*, 54 Cal. App. 285 [201 Pac. 961], it is said: "To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price and rental, and the time and manner of payment." (*Dodd* v. *Pasch*, 5 Cal. App. 686 [91 Pac. 166]; *Enlow* v. *Irwin*, 80 Cal. App. 98 [251 Pac. 658].) Manifestly, the instrument lacks one of the necessary elements of a lease. The conclusion is necessarily reached that the parties intended to contract for the actual sale of the property involved. Pro-

vision is made for "interest on the deferred payments", a provision rarely, if ever, found in leases and almost always found in contracts of sale. The payment of $500, amounting to one-seventh of the total price, before or upon the execution of the contract indicates most persuasively a sale rather than a lease. The option to purchase the property for only one dollar is a provision generally in use in contracts of purchase and sale; and the second option "to purchase the additional five acres" compels the conclusion that the parties intended the transaction to be a sale of the property.

The constitution of the republic of Mexico, duly admitted in evidence, contains the provision that "within a zone of 100 kilometers from the frontiers, and of 50 kilometers to the seacoast, no foreigner shall under any conditions acquire direct ownership of lands and waters". All of the parties to this action are citizens of the United States and have never been citizens of Mexico. The land involved is within the zone in which persons other than Mexican citizens are prohibited from ownership of real estate. At the time of the execution of the contract all of the parties to the action were ignorant of the aforementioned provision of the Mexican constitution. It is well established that transactions affecting the title to real property are governed by the law of the country in which the property is situated. (*Williams* v. *Nichol*, 47 Ark. 254 [1 S. W. 243]; *Wheeler* v. *Walker*, 64 Ala. 560; *Meylink* v. *Rhea*, 123 Iowa, 310 [98 N. W. 779]; *Lyndon Lumber Co.* v. *Sawyer*, 135 Wis. 525 [116 N. W. 255].) In *Redwood Investment Co.* v. *Exley*, 64 Cal. App. 455 [221 Pac. 973], the rule is set forth: "There can be no question that real property is exclusively subject to the laws and jurisdiction of the state where located, and that no other laws or courts can affect it." The rule is well stated in 13 Corpus Juris, page 256, section 28: "The *lex rei sitae*—the law of the place in which the property is—controls the title to, and the alienation and transfer of, land, and the effect and construction which is to be accorded to agreements intending to convey or otherwise to deal with it, the most frequent application of this rule being to deeds, mortgages, assignments for creditors and agreements for sale. Where in the performance of a contract conveyances and transfers of property situated in

several states are to be made, such conveyances and transfers must be made in accordance with the law of the place where the particular property is situated.'' Executory contracts relating to real property are governed by the same rule. (12 Cor. Jur., p. 478, sec. 76.) Under the express mandate of the Mexican law the defendants could not acquire title to the property involved. Plaintiff contracted to convey title to Mrs. Blodgett and this he could not legally do. If the consideration for a contract is unlawful, the contract is void. (Civ. Code, secs. 1607, 1608; *Berka* v. *Woodward*, 125 Cal. 119 [57 Pac. 777, 73 Am. St. Rep. 31, 45 L. R. A. 420]; *Industrial D. & L. Co.* v. *Goldschmidt*, 56 Cal. App. 507 [206 Pac. 134].) Since plaintiff was prohibited by law from conveying the property to Mrs. Blodgett it follows that the contract is unenforceable.

The judgment is reversed.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 19, 1934.