[Civ. No. 6323.   Fourth Dist.   Feb. 16, 1961.]

SAN FRANCISCO HOTEL COMPANY (a Corporation), Appellant, v. BETTY H. BAIOR, Respondent.

*Assigned by Chairman of Judicial Council.

Kelso, Schnacke, Leber, Cotton & Holmes for Appellant.

Swarner, Fitzgerald & Dougherty, H. M. Dougherty, E. L. Mackey and Harold D. Geffen for Respondent.

COUGHLIN, J.—This is an appeal from a judgment of nonsuit in an action seeking specific performance of an agreement to sell real property.

The issues on appeal concern an alleged lack of mutuality of remedy; alleged uncertainty in the agreement with respect to time of payment and identity of the purchaser; alleged failure to perform within the time prescribed; and alleged nondelivery of the agreement.

"The granting of a motion for nonsuit is warranted '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " (*Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574].)

The facts for consideration on this appeal will be set forth in accord with the foregoing rule.

The action is based upon a writing dated October 3, 1956, and entitled "Deposit Receipt," which acknowledges receipt of $1,000 from Fred Whitman or nominee as a deposit on account of the purchase price of a half section of real property for $80,000 cash, and provides for a 30-day escrow. The receipt is signed: "Jorgensen Realty, Broker, by E. M. Jorgensen." Mr. Jorgensen was a real estate agent employed by Mr. Whitman to make an offer to purchase the property in question on the terms stated. This authority was not expressed in writing. The deposit receipt also contains an offer to purchase the property upon the terms stated therein, which is signed: "Fred Whitman or nominee by EMJ Agent"; and an agreement to sell upon the conditions stated therein which is signed by defendant Baior, the respondent herein. The defendant had employed a real estate agent by the name of Sougey to obtain a purchaser of the property. Execution of the aforesaid deposit receipt followed negotiations between Jorgensen and Sougey.

The $1,000 referred to in the receipt was evidenced by a check for that amount issued by Jorgensen at the request of Whitman. The check was attached to the receipt; both were presented to the defendant by Sougey; the defendant signed the receipt and delivered both instruments to Sougey.

On October 8th the two real estate agents initiated an escrow in a local bank which, in accordance with instructions from Whitman, requested that title be vested in "Dante P. Lembi, or nominee." Lembi was an associate of Whitman and secretary-treasurer of the plaintiff corporation. At this time a check from Whitman for $1,000 was substituted for that advanced by Jorgensen and was deposited with the escrow holder. A copy of these instructions was forwarded to the defendant who contacted Sougey; inquired as to the indentity of Lembi; was told that he was an associate of Whitman, who also was connected with many corporations, one of which was the San Francisco Hotel Company, the plaintiff herein; but the instructions were not signed or returned.

Under date of October 15, 1956, the plaintiff obtained a title search to the subject property from a local title company; thereafter passed a resolution to purchase the property; under date of October 29th signed escrow instructions directed to this title company respecting the purchase of this property

in which it, the plaintiff, was named as vestee of the title; deposited $79,000 with this escrow holder; and advised the former escrow holder, the bank, to deliver to the title company the $1,000 theretofore deposited with it. The escrow instructions to the title company were signed by Lembi as secretary-treasurer of the plaintiff corporation, and the $79,000 check accompanying these instructions was signed by Whitman as president of that company and by Lembi as secretary-treasurer.

On November 16th instructions upon the form used by the title company were signed by Whitman as president and by Lembi as secretary-treasurer of the plaintiff corporation.

Under date of November 20th Whitman executed a written assignment of the agreement to the plaintiff corporation in which he set forth a copy of that agreement. This assignment was recorded on November 26th.

On December 7th the defendant caused the preparation of instructions by a third escrow holder which directed the vesting of title in the plaintiff to the property in question, less approximately 10 acres, upon receipt of the contract price, i.e., $80,000.

On February 25, 1957, the plaintiff filed the complaint herein seeking specific performance of the agreement in question. The defendant answered and cross-complained. The matter went to trial and at the close of plaintiff's case the court granted defendant's motion for nonsuit. From the judgment entered thereon the plaintiff takes this appeal.

In support of the judgment the defendant contends that the agreement was not enforceable against the plaintiff's assignor, Mr. Whitman, because his agent, Jorgensen was not authorized in writing to sign the same on his behalf and, therefore, specific performance should not be decreed because of a lack of mutuality of remedies. With respect to this contention it is conceded that the applicable rule is that set forth in section 3388 of the Civil Code which provides:

"A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance."

If Jorgensen had no authority to bind Whitman, the contract was the same as though Whitman had not signed. Applying the foregoing code rule it has been held

that mutuality of remedy exists, even though one of the parties to a contract has not signed the same, if the other party has substantially performed (*Jones* v. *Clark,* 19 Cal.2d 156, 161 [119 P.2d 731]; *Thurber* v. *Meves,* 119 Cal. 35, 38 [50 P. 1063, 51 P. 536]; *Van Fossen* v. *Yager,* 65 Cal.App. 2d 591, 596 [151 P.2d 14]), has partially performed (*Copple* v. *Aigeltinger,* 167 Cal. 706, 709 [140 P. 1073]; *Boehle* v. *Benson,* 150 Cal.App.2d 696, 701 [310 P.2d 650]; *Gibbs* v. *Mendoza,* 103 Cal.App. 183, 186 [284 P. 250]), has offered to perform (*Bird* v. *Potter,* 146 Cal. 286, 287 [79 P. 970]; *Sayward* v. *Houghton,* 119 Cal. 545, 548 [51 P. 853, 52 P. 44]; *Vassault* v. *Edwards,* 43 Cal. 458, 464), or has brought an action to compel performance. (*King* v. *Stanley,* 32 Cal.2d 584, 592 [197 P.2d 321]; *Copple* v. *Aigeltinger, supra,* 167 Cal. 706, 710; *Harper* v. *Goldschmidt,* 156 Cal. 245, 250 [104 P. 451, 134 Am.St.Rep. 124, 28 L.R.A. N.S. 689].) However, the rule has no application where one of the parties signing the contract has withdrawn therefrom before tender of performance or commencement of suit by the party who did not sign. (*Nason* v. *Lingle,* 143 Cal. 363, 367 [77 P. 71]; *Seymour* v. *Shaeffer,* 82 Cal.App.2d 823, 825-826 [187 P.2d 95]; *Jonas* v. *Leland,* 77 Cal.App.2d 770, 777 [176 P.2d 764].) The defendant contends that she withdrew from the agreement in question before the offer to perform was made on October 29th. The resultant issue requires a determination whether " 'no other reasonable conclusion is legally deducible from the evidence.' " (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768].)

After signing the deposit receipt and agreeing to sell her property, the defendant expressed a desire to retain 10 or 20 acres thereof and asked her agent to endeavor to get this concession from the buyer, but she did not want her desires in the matter to defeat the sale agreed upon; this request was relayed to Jorgensen who, in turn, advised Whitman thereof; Whitman replied that he did not want to change the deal but after he had time to survey the property he would talk about selling some of it back. During the course of the foregoing and subsequent conversations on the subject between Sougey and Jorgensen, it was made clear that the sale was not contingent upon the retention of any acreage by the defendant Baior. As time passed the defendant became more insistent with respect to her request, and by letter to her agent under date of October 22d stated that she was "with-

holding the escrow instructions until you straighten up this matter." Thereupon Sougey urged Jorgensen to persuade his client to permit Baior to retain the desired acreage. At no time was Jorgensen or Whitman advised that Baior withdrew her promise to sell or intended to withdraw unless she could retain the requested acreage. Thereafter Jorgensen had further communications with Whitman concerning the matter, but the record is not clear respecting the time when these took place. Under date of October 29th, apparently at the instigation of Sougey and Jorgensen, an amendment to the October 8th escrow instructions at the bank was drawn up which proposed the sale of a smaller area for a smaller price. On this same date the plaintiff had given its instructions to the title company; had requested the bank to transfer the $1,000 deposit to that company; and deposited the $79,000 balance of the purchase price. By this action it had done all the buyer was required to do under the contract. (*King* v. *Stanley, supra,* 32 Cal.2d 584, 588; *Kelley* v. *Russell,* 50 Cal. App.2d 520, 528 [123 P.2d 606].) From the evidence before it, the trial court could have concluded that the defendant wanted to retain a part of the property which she had agreed to sell, and was exerting every effort to do so, but that she did not wish to withdraw from the deal if her request was not met. The evidence also would support a contrary inference but, under the rule which must guide a court in passing upon a motion for nonsuit, the inferences favorable to the plaintiff's case must be accepted. Although the defendant proposed an escrow on December 7th which would effect a transfer of the property in question, less 10 acres, to the plaintiff for the sum of $80,000, in the light of her originally expressed wish that she did not want to lose the deal and agreed to transfer the whole property even though she would have liked to retain a small portion thereof, the record would support a conclusion that she did not, even on December 7th, withdraw from her agreement, but was continuing in an effort to effect the sale and retain a small acreage. Under these circumstances, the court could have concluded that mutuality of remedy was established by commencement of the instant action as well as by tender of performance on October 29th.

The defendant's contentions respecting uncertainty also are without merit. ▮ In determining whether a contract is sufficiently certain to be specifically enforced, the essential factors to be determined therefrom "are the seller, the buyer, the price to be paid, the time and manner of payment, and

the property to be transferred." (*King* v. *Stanley, supra,* 32 Cal.2d 584, 589.) The foregoing items were clearly ascertainable here. ██ The buyer was Fred Whitman. The fact that he was referred to as "Fred Whitman or nominee" did not affect his identity. The phrase "or nominee" as used in the deposit receipt was merely surplusage. Whitman was entitled to assign the rights under the agreement, including the right to enforce specific performance. (*King* v. *Stanley, supra,* 32 Cal.2d 584, 589; *Menveg* v. *Fishbaugh,* 123 Cal.App. 460, 466 [11 P.2d 438] ; *Gibbs* v. *Mendoza, supra,* 103 Cal.App. 183, 184.) If he did not choose to assign, as the purchase price was payable in cash, he could have nominated a vestee of the title without affecting his rights under the agreement. (*King* v. *Stanley, supra,* 32 Cal.2d 584, 589.) Whether a cash purchase price is paid by a buyer who takes title in his name or by an assignee which takes title in its name is immaterial. (*King* v. *Stanley, supra,* 32 Cal.2d 584, 589.) Defendant cites the case of *Cisco* v. *Van Lew,* 60 Cal. App.2d 575 [141 P.2d 433], in support of her position, but that case is clearly distinguishable from the one at bar in that the plaintiff in the cited case, who claimed as the nominee of a named buyer, had not received an assignment of the buyer's rights but nevertheless was attempting to enforce the same in an action for specific performance.

██ Although the agreement at bar provided for a 30-day escrow, it did not specify a time for performance; when the escrow should be instituted was not designated. Under these circumstances, the law implies a reasonable time for performance and this implied time element does not render the contract uncertain or unenforceable. (*Copple* v. *Aigeltinger, supra,* 167 Cal. 706, 709; *Greenstone* v. *Claretian Theo. Seminary,* 173 Cal.App.2d 21, 32 [343 P.2d 161].) Whether the offer of performance was made within a reasonable time, under the evidence in this case, was a question of fact for determination by the trial court when considering the case on its merits. (*Luckhart* v. *Ogden,* 30 Cal. 547, 558; *Polizzi* v. *Porcaro,* 110 Cal.App.2d 395, 401 [242 P.2d 949] ; *Cambridge* v. *Ramser,* 43 Cal.App. 722, 724 [185 P. 862].)

██ The contention that opening the escrow with the title company and the deposit therein of the $80,000 cash price was an ineffective offer of performance because the plaintiff was not then the assignee of Whitman's rights under the agreement cannot be sustained. From the evidence before it, the

court, by inference, could have concluded that the plaintiff was then acting on behalf of Whitman preliminary to completion of the formalities incident to a written assignment. Whitman was president of the plaintiff company; he knew of and participated in the adoption of the resolution by that company on October 26th authorizing it to purchase the property in question; and as such president he signed the check for $79,000 which accompanied the October 29th escrow instructions. Under the circumstances, it would be reasonable to conclude that the plaintiff was acting not only with the knowledge and consent of Whitman but also at his request. Furthermore, the maintenance of the escrow which was initiated on October 29th, with the $80,000 deposited therein, was a continuing offer to perform, and if it did not become effective until the written assignment from Whitman to the plaintiff on November 20th whether it then was made within a reasonable time as required by the contract, under the circumstances presented by the evidence, was a question of fact not subject to determination on a motion for nonsuit. As late as December 7th, the defendant was attempting to effect the sale by reserving 10 acres to herself. In her escrow of that date the land involved was the same, except for 10 acres; the price was the same; and the vestee of title was the plaintiff, i.e., Whitman's assignee. Her actions may be considered in determining whether the plaintiff's tender was made within a reasonable time.

■ The defendant's final contention, that there is no evidence of delivery of the deposit receipt and therefore no evidence of due execution, also is without merit. The receipt was placed in evidence by the plaintiff; at that time it then was in plaintiff's possession; and such possession supports an inference of delivery. (*Ward* v. *Dougherty,* 75 Cal. 240, 242 [17 P. 193, 7 Am.St.Rep. 151]; *Miller* v. *Jansen,* 21 Cal.2d 473, 477 [132 P.2d 801].) Furthermore, an inference of delivery is supplied by evidence respecting the activities of Jorgensen, Whitman, the plaintiff, and the defendant with respect to the transaction, based on the assumption by all of them that the agreement had been executed, and which would be meaningless unless a delivery of the deposit receipt had taken place.

Many of the factual premises vital to a determination of the issues presented by this appeal are based on inferences; the inferences from and the interpretations of the evidence relied upon by the defendant to sustain her position, although

supported by the evidence, are not exclusive; contrary inferences and interpretations also reasonably within the realm of substantial evidence support the factual premises heretofore noted and, under the controlling rule, direct a reversal of the judgment. The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.