Kermitt Lee WATERS and Jan L. Waters, for themselves and for all others similarly situated, Plaintiffs-Appellants,

v.

WEYERHAEUSER MORTGAGE COMPANY, a corporation, Weyerhaeuser Mortgage Company of Nevada, a corporation, and John Does I through L, inclusive, Defendants-Appellees.

No. 76–1813.

United States Court of Appeals, Ninth Circuit.

Sept. 21, 1978.

Rehearing Denied Nov. 30, 1978.

**504**

R. Paul Sorenson, Las Vegas, Nev., for plaintiffs-appellants.

Paul R. Hejmanowski, Las Vegas, Nev., for defendants-appellees.

Before WRIGHT and KENNEDY, Circuit Judges, and CRAIG, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

In this action alleging a violation of the Consumer Credit Protection Act (15 U.S.C. § 1601 *et seq.*), we affirm the grant of summary judgment for the defendants and hold that disclosure of the information required by § 1639(a) of the Act is timely at any time until the parties have entered into a contractual relationship.

The appellants, Mr. and Mrs. Waters, alleged in their class action that the defendants Weyerhaeuser Mortgage Company (WMC) and Weyerhaeuser Mortgage Company of Nevada (WMCN) had failed timely to disclose the required information in the financing of a home. The Waters signed an offer in 1971 to purchase a home in a Las Vegas subdivision owned by Pardee Phillips of Nevada (PPN). Being unable to obtain a Veterans Administration loan, the Waters made a second offer to purchase in May 1972, conditioned on their ability to obtain an FHA loan.

The loan application, at PPN's suggestion, went through WMCN to FHA. The basic offer stated that "Buyer agreed to make application to a lending institution to be selected by the Seller . . ." That language was modified later in the purchase offer by the following:

> Buyer and Seller acknowledge that notwithstanding any agreement or reference herein, expressed or implied, relating to financing (or to a particular loan or lender), such agreement or reference is intended by Seller as an offer of service only, and Buyer is entitled, without penalty, to secure such financing, if any, from any institution or other source and under such terms and conditions as may be acceptable to Buyer.

The buyers were told in June 1972 that the loan was approved and that FHA was committed. The sale was to be closed in July but the Waters took earlier possession under an Agreement for Use and Occupancy. Thereafter, they made improvements and added draperies and carpeting. The sale was to be closed in escrow at Lawyers' Title and on July 27 the Waters met with the escrow officer. Presented to them were a deed of trust, deed of trust note and a disclosure statement, the latter dated July 14. Mr. Waters, a lawyer, changed the date and entered the correct one, July 27, above his signature.

1. TIMELINESS OF DISCLOSURE.

The appellant purchasers contend that the failure of WMCN to provide a disclosure statement before closing violated 15 U.S.C. § 1639(b) which states:

> Except as otherwise provided in this part, the disclosures required by subdivision (a) of this section shall be made before the credit is extended, and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor.

* Of the District of Arizona.

We have not heretofore considered whether a disclosure statement can be given simultaneously with the "consummation" of the credit transaction or whether it must be given at an earlier time. We alluded in *Ljepava v. M. L. S. C. Properties, Inc.*, 511 F.2d 935 (9th Cir. 1975), to the problem of determining whether the Act's purposes were reasonably fulfilled by requiring disclosure before consummation to permit the borrower to shop for credit. We noted that, while the argument for prior disclosure was "logically persuasive," virtually every court that had considered § 1639(b) had rejected it. *Id.* at 943. The decision in *Ljepava* was based on other grounds and the question has remained open in this circuit.

Other courts have generally focused on the creation of a contractual relationship as the operative factor in determining the timeliness of disclosure. Except for a district court opinion, overruled on appeal, we have found no case which has held that disclosure at time of closing is untimely. *Bissette v. Colonial Mortgage Corp. of D. C.*, 340 F.Supp. 1191 (D.D.C.1972), *rev'd* and remanded, 155 U.S.App.D.C. 360, 477 F.2d 1245 (1973).

There can be no violation of the Act until the transaction is consummated. *Bissette v. Colonial Mortgage Corp.*, 477 F.2d at 1246; *Stevens v. Rock Springs National Bank*, 497 F.2d 307 (10th Cir. 1974); *Wachtel v. West*, 476 F.2d 1062 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973); *Thompson v. Twin City Finance Corp.*, 409 F.Supp. 924 (W.D.La. 1976); *Postow v. Oriental Building Association*, 390 F.Supp. 1130 (D.D.C.1975).

Pursuant to 15 U.S.C. § 1604, the Federal Reserve Board issued Regulation Z, 12 C.F.R. §§ 226.1–226.1002 (1972), which contained the administrative regulations applicable to the Act. Under 12 C.F.R. § 226.-8(a) (1972) "disclosures shall be made before the transaction is consummated." The consummation of a contract occurs whenever "a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party." 12 C.F.R. § 226.2(cc) (1972).

After the district court opinion in *Bissette*, which held that disclosure on the date of closing did not comply with the act, the Board proposed an amendment to the regulations which would have required that disclosure, in transactions involving the purchase of a home, be made "not less than 10 business days before the date on which the customer executes the note or other evidence of debt." 37 Fed.Reg. 15522, August 3, 1972. The amendment was not adopted, however, after the Board received adverse comments pointing out problems which consumers might have with a rigid ten-day rule.

The introduction and later rejection of the amendment creates a convincing inference that the Board believed the existing regulations contained no such requirement and intended no such time scheme to exist.

The Board, after an opportunity to consider the merits and disadvantages of requiring disclosure at a prescribed time before the consummation of the contractual relationship, chose to refrain from establishing such a requirement. We agree and hold that disclosure at time of closing satisfies the requirements of 15 U.S.C. § 1639(b).

## 2. EXISTENCE OF A CONTRACTUAL RELATIONSHIP.

As an alternative argument, the Waters contend that, in any event, a contractual relationship existed before July 27, 1972, the date of disclosure and closing of escrow. Initially in their complaint they alleged that the purchase was "consummated" on July 27 when they were given the closing papers.

After reversal of the district court opinion in *Bissette*, they asserted that a contractual relationship had in fact been consummated on one or more prior occasions, including:

(1) when they were advised in the beginning of June by an agent of PPN that their loan had been approved;

(2) when PPN permitted them to occupy the house under a rental agreement prior to the final sale;

(3) when they purchased and installed improvements before July 27;

(4) when they incurred other expenses related to the purchase and occupancy of the house;

(5) when WMCN sent escrow instructions to Lawyer's Title on June 6; and

(6) when they signed escrow instructions on April 19.

The arrangement between the appellants and WMCN involved a loan for the home purchase and concurrent execution of a deed of trust and note. Unlike the situation in *Postow v. Oriental Building Association*, 390 F.Supp. 1130 (D.D.C.1975), WMCN had sent no commitment letter to Waters nor had the latter accepted an offer to create a binding contract. Despite the contention that PPN, WMCN and WMC are interlocking companies controlled by Weyerhaeuser Company of Washington, the record fails to show that WMCN and Waters entered into any agreement before July 27, directly or through an agent.

■ Varied theories of estoppel will not aid the appellants. Nevada law requires that a contract relating to land must be in writing. N.R.S. §§ 111.205 and 111.210. An oral agreement regarding real property is void and not final until put in writing. *Dolge v. Masek*, 70 Nev. 314, 268 P.2d 919 (1954). Moreover, "[i]t is well settled . . . that, when the parties reduce their contract to writing, all oral negotiations and stipulations are merged therein." *Gage v. Phillips*, 21 Nev. 150, 26 P. 60, 61 (1891); *Tallman v. First National Bank of Nevada*, 66 Nev. 248, 208 P.2d 302, 306 (1949).

■ To avoid the Nevada Statute of Frauds in a transaction involving land, a party must prove estoppel or part performance by an "extraordinary measure . . . of evidence." *Jones v. Barnhart*, 89 Nev. 74, 506 P.2d 430, 431 (1973), *quoting Zunino v. Paramore*, 83 Nev. 506, 509, 435 P.2d 196, 197 (1967). The Waters have not made that showing.

Furthermore, the disclosure statement signed by them upon closing contained the language:

I (We) hereby acknowledge receiving and reading a completed copy of this Disclosure Statement on July 14, 1972, and that I (We) have not entered into any agreement with Lender prior to the receipt hereof.

■ Mr. Waters, an attorney, signed after the correct date above his name. Under Nevada law, one may not prove that a release did not express the intentions of the parties at the time it was signed. *Tallman v. First National Bank*, 208 P.2d at 306.

■ To conclude that a contract existed between the appellants and WMCN before July 27, we would have to ignore the Nevada Statute of Frauds, the allegations in the complaint, and the release. Nothing in the record compels this conclusion, and we affirm the district court's decision that no contractual relationship existed between the parties which required disclosure before July 27.

### 3. USE OF A 360–DAY YEAR FOR COMPUTATION OF INTEREST.

■ The complaint alleged that using a 360-day year to compute interest violated the act and the district court granted summary judgment to the defendants on that issue. The issue was not raised in appellant's opening brief, their discussion in the reply brief cited no authority, and they offered none below.

The legislative history, applicable portions of the Act, and appropriate Nevada statutes support the conclusion that the interest computation method was lawful.

### 4. DENIAL OF MOTION TO AMEND THE COMPLAINT.

Appellants assert it was error to deny their motions to amend the complaint. The following dates are significant:

| | |
|---|---|
| November 2, 1972: | Complaint filed. |
| January 23, 1973: | WMCN, the only defendant served, answered and moved for summary judgment. |
| April 18, 1973: | Plaintiffs moved for partial summary judgment. |
| December 31, 1973: | Date set for close of discovery. |
| January 30, 1974: | Plaintiffs moved to amend their complaint but did not attach the proposed amendment. |
| March 24, 1974: | Motion to amend denied without prejudice. |
| October 1, 1974: | Magistrate certified the suit as a class action. |
| February 14, 1975: | At appellants' request, discovery reopened to permit gathering of information as to members of the class. |
| April 18, 1975: | Second motion for leave to amend filed, before additional discovery had been undertaken. |

Federal Rule of Civil Procedure 15(a) provides that after a response has been filed, a complaint may be amended only by leave of court. Rule 7(b) requires that a motion state its grounds "with particularity." Local Rule 15(a) of the District of Nevada requires that the proposed amended pleading shall be attached to the motion to amend.

It was clearly discretionary to deny the first motion to amend for failure to comply with the local rule and there was no abuse of discretion in denying the second motion. The reasons for the court's determination need not be stated if they are readily apparent. *Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971).

The second motion was filed 29 months after the original complaint, 27 months after filing of the answer, and 16 months after close of discovery. There was no showing that information to support the second amended complaint was unknown or unavailable when discovery was closed.

In the original complaint it was conceded that the contract was consummated on July 27, 1972. The amendment sought to allege the existence of a prior contractual relationship. To permit the amendment would allow the plaintiffs to litigate an issue they had earlier conceded, to the prejudice of the rights of the defendants. The undue delay and obvious prejudice to the defendants if the amendment were allowed convince us that there was no abuse of discretion in denying the second motion for leave to amend.

The judgment is AFFIRMED.