**Edna JACKSON, Plaintiff–Appellant,**

v.

**Syd GRANT, Belle G. Grant, Defendants–Appellees.**

**No. 87–2801.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1988.

Decided May 31, 1989.

As Amended Nov. 22, 1989.

Robert A. Goldstein, Oakland, Cal., for plaintiff-appellant.

Dave M. McGraw, Walnut Creek, Cal., for defendants-appellees.

Before CHOY, CANBY, and TROTT, Circuit Judges.

CANBY, Circuit Judge:

Edna Jackson appeals the district court's judgment denying her rescission under the Federal Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601 *et seq.* Jackson seeks to rescind a loan transaction entered into with

Union Home Loans ("Union"), a real estate loan broker. She contends that notice of her right to cancel the loan was not properly given and that other payment terms were insufficiently disclosed on the TILA Disclosure Statement. Reviewing the denial of rescission *de novo, Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703 (9th Cir.1986), we reverse the judgment of the district court.

## BACKGROUND

In June of 1982, Union instituted foreclosure proceedings on a $26,000 loan made to Jackson in 1981. The loan was secured by a deed of trust recorded against Jackson's residence in Richmond, California. A trustee's sale was scheduled for February 9, 1983. In January of 1983, Jackson and Union discussed takeout financing to avoid the pending foreclosure. Union loan officer, Dennis Moore, ordered an appraisal of Jackson's property and foreclosure was postponed.

On February 18, 1983, Jackson received, read and executed the following documents:

(1) TILA Disclosure Statement;

(2) Mortgage Loan Disclosure Statement;

(3) Summary and Acknowledgment of the Terms of the Loan Transaction (hereinafter "Summary of Loan Terms");

(4) Deed of Trust;

(5) Promissory Note;

(6) Notice of Right to Cancel.

The TILA Disclosure Statement listed the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule for the loan.[1] The Mortgage Loan Disclosure Statement and the Statement of Loan Terms informed Jackson that Union will not be the lender, that the lender is presently not known and

that Jackson was not guaranteed a loan. The name of the lender was left blank on the Promissory Note and Deed of Trust. The Notice of Right to Cancel specified March 1, 1983 as the last date for cancellation.

Unable to find another lender, on April 28, 1983, Union sent a letter to Jackson advising her that the "loan will be made with funds owned or controlled by Union Home Loans." The terms of the loan were set out in the note and deed of trust executed, and the Disclosure Statement presented, on February 18, 1983, except that Jackson was required to pay an additional $700.00 and to delete credit life insurance from the loan. Jackson agreed to these changes and the loan closed on April 29, 1983.

On February 7, 1986, Jackson notified Syd and Belle G. Grant, assignees of the loan made by Union, of her election to cancel the loan transaction pursuant to the TILA. She filed a complaint seeking rescission on February 10, 1986. First, Jackson argued that the loan transaction was not "consummated" until April of 1983 and that she therefore did not receive proper notice of her right to cancel the transaction within three business days following consummation.[2] Second, Jackson contended that the payment schedule for the loan as set forth in the TILA Disclosure Statement is insufficient. The district court made no findings with regard to the first contention but after a bench trial apparently stated on the record that the loan transaction had been consummated in February and therefore the Notice of Right to Cancel was properly given. In its order of November 26, 1986, denying the parties' cross-motions for summary judgment prior to trial, the district court held that the failure of the TILA Disclosure Statement to specify the exact payment due dates was not a material nondisclosure.

---

**1.** The payment schedule discloses that 36 payments of $570.00 each will be due on the "5th of each month," with one final payment of $38,-570.00 "[d]ue on the 37th month."

**2.** Jackson also argues that even if the loan was "consummated" in February, the March 1st re-

scission date was incorrect because the loan was not made on February 23, three business days before March 1. Because of our decision that the loan was consummated in April, we do not reach this issue.

## DISCUSSION

■ The TILA was enacted by Congress to "avoid the uninformed use of credit." *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973) (quoting 15 U.S.C. § 1601). In order to effectuate this purpose, the TILA has been liberally construed in this circuit. *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir.1974). Even technical or minor violations of the TILA impose liability on the creditor. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.1986). " 'To insure that the consumer is protected ... [the TILA and accompanying regulations must] be absolutely complied with and strictly enforced.' " *Id.* (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)).

Section 125(a) of the TILA, 15 U.S.C. § 1635(a), provides that in credit transactions in which a security interest in a consumer's residence is retained:

> the [consumer] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later.

This right of rescission is further explained in Section 226.23(a)(3) of Regulation Z of the Federal Reserve Board:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last. *If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation.*

12 C.F.R. § 226.23(a)(3) (emphasis added) (footnote omitted).[3] Notice of the right to rescind must specify the date the rescission

period expires. 12 C.F.R. § 226.23(b)(5). Jackson argues that because the loan transaction was not consummated until late April, the rescission period expired three business days *after* that date. Accordingly, the Notice of the Right to Cancel delivered to Jackson in February listed an incorrect expiration date of March 1, *prior to* the actual consummation of her loan. Therefore, the "required notice" was never delivered and the right to rescind the transaction extended until three years after the April consummation date.

Jackson's argument has merit. Under Regulation Z, consummation "means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). When a consumer "becomes contractually obligated" is, in turn, determined by looking to state law:

> 1. *State law governs.* When a contractual obligation on the consumer's part is created is a matter to be determined under applicable law; Regulation Z does not make this determination. A contractual commitment agreement, for example, that under applicable law binds the consumer to the credit terms would be consummation. Consummation, however, does not occur merely because the consumer has made some financial investment in the transaction ... unless, of course, applicable law holds otherwise.

12 C.F.R. Pt. 226, Supp. 1 (Official Staff Interpretations), Commentary 2(a)(13).

■ Cal.Civ.Code § 1550 sets forth the required elements of a contract under California law. They include:

1. Parties capable of contracting;
2. Their consent;
3. A lawful object; and,
4. A sufficient cause or consideration.

If an essential element of the contract is reserved for the future agreement of both parties, there is generally no legal obligation created until such an agreement is entered into. *Transamerica Equip. Leasing Corp. v. Union Bank*, 426 F.2d 273,

---

**3.** "[A]bsent some obvious repugnance to the statute, the ... regulation [of the Federal Reserve Board implementing the TILA] should be accepted by the courts, as should the Board's interpretation of its own regulation." *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981).

274 (9th Cir.1970); *Ablett v. Clauson*, 43 Cal.2d 280, 272 P.2d 753, 756 (1954); 1 Witkin *Summary of California Law*, Contracts §§ 142, 156 (9th ed. 1987). It is essential not only that the parties to the contract *exist*, but that it is possible to identify them. Cal.Civ.Code § 1558. *See San Francisco Hotel Co. v. Baior*, 189 Cal.App.2d 206, 11 Cal.Rptr. 32, 36 (1961) (names of seller and buyer are essential factors in considering whether contract is sufficiently certain to be specifically enforced); *Cisco v. Van Lew*, 60 Cal.App.2d 575, 141 P.2d 433, 437 (1943) (contract for sale of land must identify the parties to the transaction); *Losson v. Blodgett*, 1 Cal. App.2d 13, 36 P.2d 147, 149 (1934) (valid real property lease must contain names of parties).

In the present case, on February 18, 1983, Jackson executed a series of documents which designated herself as the borrower and Union as the "broker" or "arranger of credit." Several documents, including the Mortgage Loan Disclosure Statement and the Statement of Loan Terms, explicitly state that Union is *not* the lender and that Jackson was not guaranteed a loan by signing the loan documents.[4] The Deed of Trust and the Promissory Note signed by Jackson leave the name of the beneficiary/lender blank, although Jackson granted Union the authority to fill in those blanks when a lender was arranged. While it is not necessary to decide what, if any, binding agreement was created by and between Jackson and Union on February 18, one conclusion is inescapable. No one, including Union, had agreed

to extend credit to Jackson as of that date and no loan transaction was "consummated."[5] The lender is unidentifiable and therefore no valid loan contract existed.

At most, the February 18 documents constituted an offer by Jackson to accept a loan under the terms specified. That offer was not "accepted" until Union agreed to fund Jackson's loan itself. *See* Cal.Civ. Code § 1586 ("[a] proposal may be revoked at any time before its acceptance is communicated by the proposer, but not afterwards").[6] Because no contract existed, Jackson was not "contractually obligated" within the meaning of 12 C.F.R. § 226.2(a)(13).

*Murphy v. Empire of America, FSA*, 746 F.2d 931 (2d Cir.1984), relied on by Union, is not controlling and can be distinguished from the instant case. In *Murphy*, the Second Circuit rejected an argument that "consummation" for TILA purposes does not occur until the closing of a loan transaction; it held that "[u]nder New York law the consumer's acceptance of *a lender's commitment offer* constitutes a binding contract." *Id.* at 934 (emphasis added). "The transaction is consummated when *the lender and borrower* sign a contract obligating *them*, respectively, to lend and to borrow the funds." *Id.* Here, however, Union did not sign a commitment letter or any other contract obligating Union to lend funds in February. The identity of the lender remained unresolved, and any loan contract therefore unconsummated, until late April. *See also Baxter v. Sparks Oldsmobile, Inc.*, 579 F.2d 863, 864 (4th

**4.** The Mortgage Loan Disclosure Statement provides: "Neither the broker nor the designated representative identified below is the lender in this transaction either directly or indirectly." In the Statement of Loan Terms Jackson initialed two paragraphs stating that "[I] understand that Union Home Loans will not be the lender and that the lender is presently not known," and "[I] understand that by signing the loan documents, [I am] not guaranteed a loan."

**5.** The regulations define "credit" as "the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14). Jackson received no such right in February.

**6.** Jackson has argued that Cal.Business & Professions Code §§ 10230 and 10241 required dis-

closure from Union, as broker, that the loan was to be made with broker-controlled funds "before the borrower becomes obligated to complete the loan." Cal.Business & Professions Code § 10240 (emphasis added). However, Section 10241(j) only requires disclosure of whether "the broker anticipates that the loan to the borrower may be made wholly or in part from broker-controlled funds." Cal.Business & Professions Code § 10241. Union essentially made this disclosure in paragraph 15 of the Statement of Loan Terms when it expressly stated that Union would not be the lender. Our decision does not rely on any failure of disclosure under the California Business & Professions Code.

Cir.1978) (TILA does not apply when no binding contract consummated by parties; condition precedent necessary to consummate the extension of credit was "approval of an appropriate financier"). *Cf. Waters v. Weyerhaeuser Mortgage Co.*, 582 F.2d 503, 506 (9th Cir.1978) (consummation occurs at closing when no commitment letter sent and borrower had not accepted an offer to create a binding contract prior to closing).

■ Because the loan transaction was not consummated until late April and Jackson received no notice of her TILA cancellation right and the expiration date at that time, Jackson's right to rescind extended three years and her request for rescission several months before her balloon payment was due was timely. We reach this conclusion without great enthusiasm, for Jackson received many of the benefits of the agreement she is now rescinding. Nevertheless,

> Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions.

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705 (9th Cir.1986).

Our conclusion makes it unnecessary to address whether there was insufficient disclosure of the repayment terms.[7] This case is remanded to the district court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

TROTT, Circuit Judge, dissenting:

I respectfully dissent. I agree with Judge Conti and Judge Schnacke that con-

summation of Edna Jackson's loan occurred on February 18, 1983. As I see it, Union Home Loans and Jackson were parties to a binding contract as of that date, and the *source* of the funds was irrelevant. Union was obligated to come up with the money, and it did. Accordingly, the right to rescind extended only until March 1, 1983.

Under the circumstances her attempt to cancel the transaction almost three years later on February 7, 1986 was almost three years too late.

Today, the Grants learn a painful lesson. They learn that a law designed by Congress to shield the unwary consumer can also be a sword with which a wily borrower can sever financial responsibilities, leaving a trusting lender holding an empty bag. If the majority is correct that Jackson's arguments have technical merit—and I agree that the majority has made a strong case for its analysis—this result lends new meaning to the phrase "biting the hand that feeds you." I do share one sentiment with the majority: their lack of enthusiasm for this result.

What fails to come through in the majority's opinion is that Jackson was rescued from a trustees' sale by Dennis Moore who went out of his way to save Jackson's home. This is his business, so he gets no medals for his behavior, but neither he nor his assignees deserved what they got in return. Three years later, after enjoying the benefit of Mr. Moore's helping hand, Edna Jackson ducked out on her financial obligations on the eve of the required final payment of $38,570. The Grants now also know what a loophole is. It is possible for people to live up to moral obligations even if the cold letter of the law provides an

---

7. Some courts have found that a consumer's right of action attaches under the TILA despite the failure to consummate a mutually binding contract. *See, e.g., Bryson v. Bank of New York*, 584 F.Supp. 1306, 1317 (S.D.N.Y.1984) (TILA attaches when consumer committed "without regard for the degree of commitment of the lender"); *Madewell v. Marietta Dodge, Inc.*, 506 F.Supp. 286 (N.D.Ga.1980) (consumers obligated under Georgia law); *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. 979, 982–83 (S.D.Ohio 1976). These decisions may be consistent with 12 C.F.R. § 226.2(a)(13) which defines consummation as the point at which "*a consumer* becomes contractually obligated." (emphasis added). However, they do not alter our reasoning in this case; namely, that Jackson was not contractually obligated in February because, under California law, no contract existed at all binding Jackson to Union *or any other lender*. We express no opinion as to whether a consumer's right of action may attach when only the consumer is contractually obligated.

easy out, but this case does not provide a display of that virtue. I am reminded of the observation of H.L. Mencken who said, "Injustice is relatively easy to bear; what stings is Justice." Mencken, H.L., *Prejudices:* Third Series (1922). If this is what Congress intended when it set out to protect the unwary from "... home improvement racketeers who trick homeowners, particularly the poor ...,"[1] I would be quite surprised. I fear instead that what we have before us is an example of a well-intentioned law being used for questionable purposes.

---

1. 114 *Cong.Rec.* 14388 (daily ed. May 22, 1968)    (statement of Rep. Sullivan).