In re William **RAMSEY,** Debtor.

William **RAMSEY,** Appellant,

v.

**VISTA MORTGAGE CORP.,** Robert Tepper, Ruth Beglau, Lea H. Rizk, Joyce E. Sterrenberg, Trustee for the Sterrenberg Trust, George W. Suhrie, Betty W. Suhrie, and Ress Financial Corp., Appellees.

BAP No. CC–93–1115–JMeK.
Bankruptcy No. ND–91–82591–RR.
Adv. No. ND–91–06416–RR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 22, 1994.

Decided Dec. 21, 1994.

Christopher C. Gautschi, Ventura, CA, for appellant.

Dennis H. Doss, Newport Beach, CA, for appellees.

Before JONES, MEYERS and KLEIN,[1] Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### I. FACTS

In September 1989 Debtor William Ramsey ("Ramsey") entered into negotiations to borrow money to refinance his house. A group of investors ("the Investors")[2] became the lenders under the note and are the appellees to the instant appeal. Vista Mortgage Corporation ("Vista") arranged the loan as

real estate broker, prepared the required federal disclosures and acted as the servicing agent for the Investors in the collection of the loan.[3]

On September 13, 1989, Ramsey signed a promissory note and deed of trust under which he borrowed $212,000 at 14% interest with interest only payable in sixty monthly payments of $2,473.33 beginning December 15, 1989. The final interest payment, plus the $212,000 principal, was payable on November 15, 1994.

Also on September 13, 1989, Ramsey received a Truth In Lending Disclosure Statement ("Disclosure Statement") which made the following disclosures:

| | | |
|---|---|---|
| 1. | annual percentage rate: | 16.99% |
| 2. | finance charge | $171,005.80 |
| 3. | amount financed | $189,394.00 |
| 4. | total amount of payments | $360,399.80 |
| 5. | monthly payments starting | 11–15–89 |
| 6. | balloon payment due | 10–15–94. |

In early October 1989, it became apparent that there were not enough net loan proceeds to close escrow. The shortage was about $3,000. At Ramsey's request, Vista agreed to waive $3,000 of its loan fee in order to allow the loan to proceed. Vista did not produce a new disclosure statement, which should have appeared as follows:

| | | |
|---|---|---|
| 1. | annual percentage rate: | (less than 16.99%) |
| 2. | finance charge | $167,597.87 |
| 3. | amount financed | $192,801.93 |
| 4. | total amount of payments | $360,399.80 |
| 5. | monthly payments starting | 12–15–89 |
| 6. | balloon payment due | 11–15–94 |

On October 25, 1989, Vista gave Ramsey notice of his three-day right to cancel under the Truth In Lending Act ("the Act"), 15 U.S.C.S. § 1635(a) (1993). On October 28, 1989 Ramsey exercised that right by canceling the agreement. Two days later on October 30, 1989, Ramsey withdrew his cancellation in a handwritten note and requested that Vista proceed with the loan. The first trust deed loan was recorded on October 31, 1989.

1. Honorable Christopher M. Klein, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. The Investors are: Robert Tepper; Ruth Beglau; Lea H. Rizk; Joyce E. Sterrenberg, Trustee for the Sterrenberg Trust; George W. Suhrie; Betty W. Suhrie; and Ress Financial Corp. The Investors were first joined as parties in Ramsey's March 25, 1992 First Amended Complaint.

3. Vista was found by the bankruptcy court not to be a "creditor" within the meaning of 15 U.S.C. Section 1602(f) and therefore not subject to TILA disclosure requirements. This finding makes the Investors the 1602(f) "creditors" and consequently the real parties in interest. Ramsey does not dispute this conclusion on appeal.

In 1991 Ramsey sought Chapter 11 bankruptcy protection. Ramsey continued to make monthly payments pursuant to the loan until March 15, 1991. On April 4, 1991, Ramsey sent notice of rescission of the loan transaction pursuant to section 1635(a) of the Act, arguing inadequate disclosure. On August 27, 1991, Ramsey filed an adversary complaint seeking rescission together with an injunction against foreclosure. On March 25, 1992, the adversary complaint was amended to include the Investors.

On April 2, 1992, Vista and the Investors (cumulatively "appellees") filed their motion for summary judgment. On May 27, 1992, a hearing was held in which the court orally granted the motion. Findings and Conclusions were entered on July 6, 1992, and the written order followed on July 9, 1992. Ramsey's motion for new trial was denied on December 2, 1992. Ramsey appeals. We affirm.

## II. ISSUES

On appeal Ramsey raises two errors. First, he claims that the trial court erred in finding that the loan was "consummated" within the meaning of the Act on September 13, 1989 (when the promissory note and deed were signed). Second, he claims that the inaccuracies of Vista's disclosure statement were a violation of the Act because the statement overstated the actual annual percentage rate and understated the amount to be financed.

## III. STANDARD OF REVIEW

We review the granting of summary judgment *de novo*. *E.g. Maisano v. United States*, 908 F.2d 408, 409 (9th Cir.1990).

## IV. DISCUSSION

### 1. The Truth-in-Lending Act

The Truth–In–Lending Act, 15 U.S.C.S. §§ 1601–1693r, was originally enacted in 1968 and overhauled in 1980 through the Truth–In–Lending Simplification and Reform Act ("TILSR"). The Act authorized the Board of Governors of the Federal Reserve System ("Board") to promulgate implementing regulations. 15 U.S.C.S. § 1604(a) (1993). In accordance with this mandate, the Board created Regulation Z, 12 C.F.R. §§ 226.1 to 226.30. *See Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).

From 1969 to 1980, the Board issued numerous official board interpretations of Regulation Z. These official Board interpretations were revoked as of October 1, 1982, and replaced with the Official Staff Commentary to Regulation Z ("Official Commentary").

In any analysis of an issue under the Act, the court must take into account not only the plain language of the statute, but also how that language has been interpreted in Regulation Z and the Official Commentary. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980).

### 2. Date of Consummation of the Loan Under The Act

The first assignment of error concerns the date of "consummation" of the loan. If the loan was consummated on September 13, 1989, when Ramsey signed the promissory note and deed of trust securing the loan and was given a disclosure statement, then appellees were under no obligation to make further disclosures after the terms of the loan were modified. If, on the other hand, the date of consummation was later, after the loan terms had been modified, then Ramsey's argument that Vista's disclosure should have been amended has merit.

Regulation Z § 226.2(13) defines consummation as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(13) (1989).[4] If the lender makes pre-consummation disclosures which become inaccurate due to the occurrence of a subsequent event, the lender must provide an amended disclosure statement before consummation. 12 C.F.R. § 226.17(f). Official Commentary 17(f) gives the following illustration:

> If disclosures are made in a regular transaction on July 1, the transaction is consum-

---

4. All references to 12 C.F.R. are to the regulations as they existed in 1989.

mated on July 15, and the actual annual percentage rate varies by more than ⅛ of 1 percentage point from the disclosed annual percentage rate, the creditor must either redisclose the changed terms or furnish a complete set of new disclosures before consummation.

Ralph C. Clontz, Jr. & James A. Douglas, *Truth–In–Lending Manual* ¶ 5.01[10] at 5–33 (6th ed. 1994) ("Clontz & Douglas").

■ Under the Act, the date of consummation is governed by state law. Official Commentary 2(a)(13). *See also* Clontz & Douglas, ¶ 6.03(1) at 6–12. Therefore, we look to California law to determine the correct date of consummation. Under California law, a contract is formed when (1) parties capable of contracting (2) consent (3) to a lawful object (4) for sufficient consideration. Cal.Civ.Code § 1550 (West 1994).

■ In *Jackson v. Grant*, 890 F.2d 118 (9th Cir.1989), the Ninth Circuit held that under California law a loan contract was not consummated when the borrower signed the promissory note and deed of trust because the actual lender was not known at that time. Under these circumstances, the loan is not "consummated" until the actual lender is identified, because until that point there is no legally enforceable contract.

■ This is not the case in the instant appeal. When Ramsey signed the loan documents on September 13, 1989, he knew who was going to provide the financing. Courts recognize the date of signing a binding loan contract as the date of consummation when the lender is identifiable. *Murphy v. Empire of America, FSA,* 746 F.2d 931, 934 (2d Cir.1984) (applying New York law). The court in *Jackson* distinguished *Murphy,* not because it was inaccurate, but because in *Jackson* the lender was not identified when the loan documents were signed. *Jackson,* 890 F.2d at 121–22.

■ In the instant case, Ramsey signed the loan documents and received accurate disclosure on September 13, 1989. Over a month later it was found that the escrow account was short by about $3,000. Vista agreed to waive $3,000 of its loan fee in order to allow the loan to proceed. Although Vista's refusal to waive the loan fees may have resulted in the deal falling through, Ramsey presented no evidence to indicate that he was not already contractually obligated to adhere to the original terms of the loan. Even though Vista agreed to the changes, we hold that Ramsey was "legally obligated" to the financing terms as of September 13, 1989— the date he signed the promissory note and deed of trust and agreed to borrow money from an identifiable lender.

■ Therefore, we conclude that the appellees were not required to make additional disclosures as to the amount financed and a revised annual percentage rate ("APR"). In reaching this decision, we note that it was Ramsey himself who requested Vista to voluntarily waive $3,000 of its fees and add that amount to his loan. It would be a strange result indeed if we were to hold Vista liable for failing to "disclose" to Ramsey an additional $3,000 of principal, when it was Ramsey himself who asked Vista to add that $3,000 to the loan balance. Since Ramsey knew the actual amount financed, he was not in danger of being defrauded, and did not need the protection of the Act. In addition, we note that the final APR was *lower* than Ramsey's bargained-for APR. While we are cognizant that the Act should be liberally construed to protect borrowers, *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 650 (9th Cir.1974), Ramsey is not, in these circumstances, entitled to the protection afforded by a strict application of the Act. However, we do limit our holding to the unique facts of this case.

### 3. Alternative Theories for Upholding Summary Judgment

Even assuming *arguendo* that September 13, 1989, was not the date of consummation for purposes of the Act, we are nevertheless unpersuaded that failure to amend the disclosure statement was a violation of the Act.

### A. Inaccurate Disclosure of the Amount Financed

■ The Act and Regulation Z contain detailed disclosure requirements for consumer loans. The Act provides:

(a) **Disclosure of obligor's right to rescind**.... [The consumer] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later....

15 U.S.C.S. § 1635(a) (1993).

Regulation Z goes on to explain that if "the required notice or material disclosures ... are not delivered, the right to rescind shall expire 3 years after consummation...." 12 C.F.R. § 226.23(a)(3). Regulation Z defines the term "material disclosures" to include the accurate disclosure of the APR and the amount financed. 12 C.F.R. § 226.23(a)(3) n. 48.[5]

Although a technical reading of the Act might lead to the conclusion that Ramsey is entitled to a 3–year right of rescission because Vista never delivered a disclosure statement which accurately reflected the total amount financed, we nevertheless hold that in this case Vista's failure was not a violation of the Act. We base this decision both on the fact that the Act was designed to protect consumers from unscrupulous or dishonest lending practices, 15 U.S.C.S. § 1601 (1993), and on the fact that Ramsey *knew* that he was borrowing $3,000 more than originally agreed. Again, it would be an ironic use of the Act to allow a borrower to rescind a loan agreement due to inadequate disclosure when the borrower himself requested the changes and was therefore fully aware of them.

B. *Inaccurate Disclosure of the Actual APR*

■ Ramsey argues that Vista's Disclosure Statement inaccurately stated the actual APR of the loan. Under both the Act and Regulation Z, an APR disclosure is considered "accurate" if it is within a ⅛ of 1 percentage point (.125%) up or down of the actual APR. 15 U.S.C.S. § 1606(c) (1993);

12 C.F.R. § 226.22(a)(2). Although there is no record of what the actual APR on the loan was, we assume *arguendo* that it was more than ⅛ of a percent lower than the stated amount. We make this assumption because the real issue on appeal from summary judgment is not whether the disclosed APR is inaccurate, but whether that inaccuracy is a violation of the Act.

The Act provides that:

(z) The disclosure of an amount or percentage which is greater than the amount or percentage required to be disclosed under this title does not *in itself* constitute a violation of this title.

15 U.S.C.S. § 1602(z) (1993) (emphasis added). While the Act does not explain what more it takes to constitute a violation, Regulation Z provides:

An error in disclosure of the annual percentage rate or finance charge shall not, in itself, be considered a violation of this regulation if: (1) the error resulted from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor promptly discontinues use of that calculation tool for disclosure purposes and notifies the Board in writing of the error in the calculation tool.

12 C.F.R. § 226.22(a) n. 45(d).

One bankruptcy court has stated that the "conventional" interpretation of the interplay between these two provisions is that understatements *and* overstatements of the APR in excess of the permitted tolerance constitute violations, unless the two conditions contained in footnote 45(d) are present. *In re Cox*, 114 B.R. 165, 167 (Bankr.C.D.Ill.1990). However, the court in *Cox* cites no authority for why its interpretation is "conventional," and even admits that the Regulation's treatment of inaccuracies confuses the real meaning of 15 U.S.C.S. § 1602(z). It does not appear that other courts have adopted the *Cox* approach.

On the other hand, commentators have argued that the Act's exception for overstate-

---

**5.** It should be noted that in Regulation Z, "[f]ootnotes have the same legal effect as the text of the regulation." Regulation Z § 226.2(b)(4) (1993).

ment of the APR absolves a creditor from liability for overstatements. *See* Ernest L. Sarason, Jr., *Truth in Lending,* ¶ 4.2–6.4 (1986); Dennis Replansky, *Truth-in-Lending and Regulation Z, A Practical Guide to Closed–End Credit* 92 (1984).

█ This panel favors a middle ground, one which we consider to be in line with the policy behind the Act. For the reasons set forth below, we hold that a borrower who brings an action under the Act due to an overstatement of the actual APR must demonstrate detrimental reliance on that overstatement in order to be entitled to the 3–year rescissory period.

Congress, in passing the Act, declared that its purpose was to "avoid the *uninformed* use of credit, and to protect the consumer against *inaccurate* and *unfair* credit billing and credit card practices." 15 U.S.C.S. § 1601 (1993) (emphasis added). The Supreme Court has explained that the Act was passed to allow borrowers to compare available costs of credit and to prevent consumers from being misled as to the total cost of financing. *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 366–67, 93 S.Ct. 1652, 1659, 36 L.Ed.2d 318 (1973).

█ Because it is plain that the purpose of the Act is to prevent ordinary consumers from being deceived as to how much interest they are being charged, Congress was more concerned about *understatements* in the actual APR. As a result, the Act provides that mere overstatement, without more, does not constitute a violation of the Act. 15 U.S.C.S. § 1602(z) (1993).

However, we recognize that, in limited circumstances, a borrower may be harmed by a lender who overstates the actual APR of a loan. For example, if a lender states that the APR is 20%, when it is actually 16%, the borrower may then go to another lender and borrow money at 18%.

It is clear from the record that Ramsey did not rely to his detriment on Vista's failure to amend its disclosure statement. It would be unconscionable to hold Vista liable for a violation of the Act under these circumstances.

## C. *Right of Rescission*

█ Finally, we note that Ramsey initially exercised his right of rescission on October 28, 1989, then waived that right two days later. Therefore, even if we agreed that Ramsey was entitled to the 3–year rescissory period, he would still not be entitled to rescind the loan agreement, having already exercised and waived his right of rescission with full knowledge of the loan modification.

## V. CONCLUSION

Regardless of which theory we use to reach our conclusion, we find that given the unique facts of this case, and considering the policy and plain language of the Truth in Lending Act, Ramsey is not entitled to a rescission of the loan agreement as a matter of law, and therefore summary judgment is proper. We AFFIRM.